**UNITED STATES of America ex rel. Joseph A. DI RIENZO, Appellant,**

v.

**STATE OF NEW JERSEY.**

No. 17683.

United States Court of Appeals, Third Circuit.

Submitted on Briefs Jan. 9, 1970.

Decided March 16, 1970.

Joseph A. Di Rienzo, pro se.

Joseph P. Lordi, County Prosecutor of Essex County, Robert L. Podvey, Newark, N. J., for appellee.

Before BIGGS, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from the District Court order of October 3, 1968, dismissing relator's petition for a writ of habeas corpus.

Relator was convicted of robbery, after trial to a jury, and sentenced on January 5, 1961, to 7 to 10 years in the state penitentiary. He was released on parole on February 15, 1966, but allegedly violated parole on July 24, 1966, and, as a result, was returned to prison as a parole violator on December 5, 1966. He was granted an unconditional release from the 1961 sentence on May 19, 1967. Sometime after the violation of parole on July 24, 1966, which apparently resulted from his arrest on "new (criminal) charges," he was convicted of and sentenced for such "new (criminal) charges resulting in a new prison term as a second offender."[1] Since January 1968, he has been serving the sentence imposed as a result of that second conviction.

On September 30, 1965, five months before his release on parole, relator filed a petition for post-conviction relief under New Jersey Rule 3:10A–1 ff. [now R. 3:22–1 et seq.], challenging his first conviction. He alleged, *inter alia*, that he had been denied his right to effective counsel at the trial, that he had been denied the right to appointed counsel on appeal, and that he had been denied his right to due process by the introduction of his juvenile record during his trial and by certain conduct of the trial judge. After a hearing, at which relator was represented by counsel and evidence was taken on two days, his petition was denied by the lower court in June 1966 and its order was affirmed by the Superior Court on December 8, 1967. Relator's petition for certification to the Supreme Court of New Jersey was denied on May 28, 1968. He then filed a petition for a writ of habeas corpus in the District Court on August 12, 1968, alleging the same constitutional defects as stated in his New Jersey post-conviction petition. The District Court, after examination of the transcripts of the trial and post-conviction hearing, found relator's contentions without merit and further found that it had no jurisdiction to consider the petition since the 1961 sentence had expired before the petition had been filed.

Since we have concluded that the relator's contentions on the merits must be rejected, a lengthy discussion of the jurisdictional issue is not necessary. It is sufficient that the recent decisions of the Supreme Court indicate that a district court has jurisdiction, under Chapter 153 of Title 28,[2] of this petition for a writ of habeas corpus on this record. See, for example, Carafas v. LaVallee,

---

1. The quoted language is from page 1 of the Appendix to the District Court habeas corpus petition. The New Jersey records show that (1) relator was arrested July 24, 1966, on charges of larceny and other criminal offenses, (2) he was released on bail on August 5, 1966, (3) he was sentenced on February 15, 1968, to a term of 6-to-10 years following his conviction for receiving stolen goods, and (4) this sentence was modified on March 5, 1969, to 3-to-5 years, without giving credit for the period December 5, 1966, to May 19, 1967 (see p. 226).

2. 28 U.S.C. § 2241(c) (3) provides in part: "The writ of habeas corpus shall not extend to a prisoner unless—
* * * * *

"(3) He is in custody in violation of the Constitution or laws of the United States; * * *"
As noted above, relator was in custody allegedly on terms violating the Constitution when this petition was filed, since he should have been given credit on his current sentence for the time served on the allegedly invalid 1961 sentence. See New Jersey Crim.Prac. Rule 3:7–10(h) (1968) quoted below. Relator was entitled to non-discriminatory application of that rule in his case under the equal protection and due process clauses. Cf., e. g., Handley v. Page, 398 F.2d 351, 352 (10th Cir. 1968), cert. den. 394 U.S. 935, 89 S.Ct. 1212, 22 L.Ed.2d 466 (1969).

391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Assuming the invalidity of the 1961 sentence as alleged by relator, these cases support his contention that, when his District Court petition was filed in August 1968, he was in custody under a February 1968 sentence which violated the Constitution since it failed to give him credit, clearly mandated by N.J. Crim.Prac. Rule 3:7–10(h) [now R. 3: 21–8], for the time he had served on the allegedly unconstitutional 1961 sentence between December 5, 1966, and May 19, 1967. In Carafas v. LaVallee, *supra,* the Supreme Court said, while holding that discharge of a prisoner following the filing of his petition did not oust the federal courts of jurisdiction:

"[T]he statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that '[t]he court shall * * dispose of the matter as law and justice require.' 28 U.S.C. § 2243. The 1966 amendments to the habeas corpus statute seem specifically to contemplate the possibility of relief other than immediate release from physical custody." Id. at 239, 88 S.Ct. at 1560.

In Peyton v. Rowe, *supra,* the Supreme Court held that a state prisoner could challenge future consecutive sentences regardless of which sentence he was presently serving.

In the instant case, it would appear that there is relief that a federal court could effectively grant to relator. If his first conviction were now set aside, the time spent under that sentence subsequent to his arrest for the crime for which he is now committed (December 5, 1966, to May 19, 1967) would be credited, apparently, to the sentence presently being served.[3] Rule 3:7–10(h) of the N.J. Crim.Prac. Rules (1968), effective at the dates of both of relator's sentencings on the second conviction, provides:

"In all custodial sentences the prisoner shall receive credit on the term imposed for any time he may have served in custody between his arrest and the imposition of sentence."[4]

In Cappetta v. Wainwright, 406 F.2d 1238 (5th Cir.), cert. den. 396 U.S. 846, 90 S.Ct. 55, 24 L.Ed.2d 96 (1969), the court was faced with a similar jurisdictional issue. The petitioner claimed that setting aside his fully served sentence would entitle him to immediate release from a second sentence he was then serving. The court reversed the District Court's dismissal for want of jurisdiction and remanded the case for a determination whether the setting aside of the fully served sentence "would result in the [petitioner] receiving credit *in some degree*" on his second sentence. 406 F.2d at 1239 (emphasis added).[5] Sim-

3. Of course, relator would not be entitled to credit for time served on his first conviction before his arrest for the second crime. The Constitution does not require states to credit prisoners with all time served under unconstitutional sentences, e. g., United States ex rel. Watson v. Commonwealth & Common Pleas Court, 260 F.Supp. 474 (E.D.Pa.1966); Thacker v. Peyton, 289 F.Supp. 368 (W.D.Va. 1968), and it does not appear that New Jersey requires its courts to give such credit.

4. The New Jersey Supreme Court amended this rule, effective September 8, 1969, to provide that a prisoner would receive credit for time served "in custody in jail or in a state hospital" between arrest and sentence. N.J. Rules Governing Crim. Prac. 3:21–8 (1969). While the wording of this rule would apparently preclude the crediting of time relator spent in state prison as a result of his adjudication as a parole violator, it was not in effect at the time of his most recent sentencing.

5. In the instant case, relator filed his state post-conviction petition five months before he was released on parole, and 20 months before he was granted his unconditional release. It took the state courts almost three years to adjudicate relator's claims. Two months after the New Jersey Supreme Court denied relator's petition for certification, he petitioned the federal court. If relator were now to be barred from an adjudication of his claims

ilarly, here, since invalidation of the first conviction would eventually lead to a shortening of the second, present sentence, the District Court has jurisdiction to grant review of relator's 1961 conviction. Cf. Tucker v. Peyton, 357 F.2d 115 (4th Cir. 1966); Williams v. Peyton, 372 F.2d 216 (4th Cir. 1967).

The two principal contentions of relator allegedly requiring the grant of a writ of habeas corpus are these:

A. ALLEGED DENIAL OF CONSTITUTIONAL RIGHT TO THE APPOINTMENT OF COUNSEL TO FILE AND PROSECUTE AN APPEAL FROM RELATOR'S JANUARY 1961 CONVICTION

■ At the time of relator's sentence, he stated to the trial judge: "I would like to have another lawyer and have a new trial" (p. 8 of 1/5/61 sentencing transcript). Also he testified that he wrote the Essex County Court Clerk for assistance in filing an appeal without success. Relator argues that because the state authorities knew of his desire to appeal, they were constitutionally required to appoint an attorney to represent him; their failure to do so deprived him of due process. See Swenson v. Bosler, 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); cf. United States ex rel. Smith v. McMann, 417 F.2d 648 (2nd Cir. 1969). However, relator has been granted what was in effect an appeal *nunc pro tunc*, since the New Jersey Superior Court Appellate Division,[6] in its December 8, 1967, opinion affirming the denial of relator's post-conviction petition by the Essex County Court, said:

" * * * [T]o be certain that no injustice is done defendant we have examined not only the record of the post-conviction proceeding but the record of the trial itself, and defendant's contentions as if this were appeals from both. We have found nothing in the trial or in the post-conviction proceeding which would justify setting aside the conviction."[7]

Under these circumstances, this contention does not justify reversal of the District Court order. Cf. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v.

---

in federal court, then exhaustion of state remedies could make it impossible to reach a federal determination of many claims. See Word v. North Carolina, 406 F.2d 352, 354 (4th Cir. 1969). In Peyton v. Rowe, *supra* 391 U.S. at page 62, 88 S.Ct. at 1553, the court pointed out that postponing evidentiary hearings makes it "difficult or impossible to secure crucial testimony on disputed issues of fact" because of dimmed memories or death. "If the Government * * * desires * * * to claim that the prisoner has abused the writ of *habeas corpus* [for example, by delay in instituting proceedings in the state court between January 1961 and September 1965], it rests with the Government to make that claim with clarity and particularity in its return to the order to show cause." Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). Cf. Sanders v. United States, 373 U.S. 1, 10–12, 17–18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); Fay v. Noia, 372 U.S. 391, 423, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In its answer filed in the District Court in September 1968, respondent did not make any claim that the delay in relator's claim constituted an abuse of the writ of habeas corpus within the language of the above-cited cases.

6. Docket No. A746–66. The court noted in that opinion (p. 1):
"Present counsel was assigned to represent him in the appeal and has done so ably. In addition, defendant has filed his own brief, supplementing the one filed by appellate counsel."

7. The last two sentences of this opinion are these:
"As we said, we have examined all of the trial record and the record of the post-conviction proceedings, not only the items specifically pointed out by defendant, and find no prejudicial error anywhere. We are satisfied, as were the trial judge and Judge Camarata, that defendant was adequately represented at the trial, that he was given a fair trial, that the verdict was justified by the evidence and that there is no reason to upset the conviction."

California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

## B. ALLEGED DENIAL OF THE EFFECTIVE ASSISTANCE OF COUNSEL

■ Relator first complained,[8] at the time of sentencing (January 5, 1961), that assigned counsel was not an experienced criminal trial lawyer and had been ineffective. The trial judge rejected this claim at that time, saying:

"Let the record also reflect that during the course of the trial Mr. Pietrucha handled himself as an old time trial lawyer, if we may use the term, and he made the proper objections at the proper time and he did everything he could to protect his client's interest. Where the Court thought the rights of the defendant were prejudiced the court would encourage an objection from defense counsel because the Court is as jealous of the rights of the defendant as anyone in the courtroom."

As noted above, relator took no further action concerning this complaint until more than 4½ years later, when he filed his state court application for post-conviction relief on September 30, 1965.[9] This contention was rejected by the Essex County Court judge in an opinion of over 10 pages in June 1966 (pp. 31–42 of June 10, 1966, transcript), by the Appellate Division of the New Jersey Superior Court in its December 8, 1967, opinion, and by the District Court opinion of October 3, 1968.

8. Relator had thanked his counsel "for conducting the trial" while the jury was deliberating (N.T. 62 and 88–90).

9. The judge conducting the post-conviction hearing of May-June 1966 included these comments on relator's failure to appeal from the January 1961 sentence prior to September 1965 (pp. 36–37 of transcript):
"I believe, if he really wanted to appeal, he would have had no difficulty ascertaining the proper procedures from someone at the prison.
"He wrote letters to Judge Conklin. All I have are the replies of Judge Conklin to him. One letter is dated January 25th, 1961. The one from the County Clerk bears out Mr. di

After a careful review of the record at the December 1960 trial and the May-June 1966 post-conviction relief application hearing, we have concluded that the following language of this court in In re Ernst's Petition, 294 F.2d 556, 558 (3rd Cir. 1961), is applicable:

"Petitioner now criticizes various actions and omissions of defense counsel at the trial. However, we think the matters of which petitioner complains fall far short of establishing that the defendant did not receive professionally acceptable representation and assistance in the conduct of his defense. We approach the problem as did the Court of Appeals for the District of Columbia when it said: '[A]bsence of effective representation of counsel * * * must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and correct it.' Diggs v. Welch, 1945, * * * 80 U.S.App.D.C. 5, 148 F.2d 667, 670."

Applying the language of a more recent decision of this court, we cannot say that "counsel's performance was so incompetent or negligent as to constitute the proceedings a farce or mockery of justice shocking to the court." See United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1213 (3rd Cir. 1969).

Both the trial judge and the hearing judge in the post-conviction proceeding found that relator's counsel acted as an experienced criminal trial defense

Rienzo's contention on February 28th, 1961, where the indictment was enclosed.
"I have a letter from Judge Conklin, March 15th, 1962, which reads as follows: 'The court cannot grant your request to extend the time of appeal. You were sentenced on January 5th, 1961.' This indicates to me that he knew in 1962 that he had a right of appeal from the very letter of Judge Conklin. Then, again on August 17th, 1965, Judge Conklin wrote to Di Rienzo, 'Under the rules of the Supreme Court, this Court cannot change a sentence after sixty days.' I am satisfied that this defendant knew he had a right of appeal and did not exercise it."

lawyer and effectively represented relator at the trial (p. 4 of 1/5/61 sentencing transcript and pp. 41–42 of hearing of 6/10/66).

It cannot be said that relator's counsel did a "perfunctory" job or acted in "bad faith." [10] He interviewed relator at least twice in jail; he interviewed another prisoner and had him subpoenaed after such prisoner told counsel that the principal state witness (the co-defendant) had told him that Di Rienzo had not participated in the crime. He interviewed at least three alibi witnesses and had them called to testify. He interviewed a photographer who had allegedly seen the robbers and had him subpoenaed (he was not called when it appeared that he did not see the second robber). At trial, he disclosed the allegedly untrustworthy method used by the police in having the victim identify relator. He disclosed the past record of the co-defendant and cross-examined him and the victim concerning inconsistencies in their statements (e. g., the fact that both robbers spoke Spanish; Di Rienzo's parents testified that he spoke no Spanish); and his summation carefully reviewed all these factors.[11]

Although the trial judge intervened to assist counsel for relator on a few occasions (such as specifically asking the

relator if he committed the crime, striking a possibly prejudicial statement of a witness and instructing him that no rebuttal to the prosecutor's argument is permitted in New Jersey), no prejudice resulted to relator from such action. Also, it cannot be said that "representation [was] so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it." [12] See United States ex rel. Mathis v. Rundle, 394 F.2d 748, 750 (3rd Cir. 1968).

We have carefully reviewed and reject the other contentions of relator.

The District Court order of October 3, 1968, will be affirmed.

ALDISERT, Circuit Judge (concurring in result).

While I do not disagree with the substance of the majority's analysis of the merits of this appeal, I believe that the district court was correct in holding that it was without jurisdiction to adjudicate this habeas application.

The federal habeas corpus statute, 28 U.S.C.A. § 2241, states that "the writ of habeas corpus shall not extend to a prisoner unless * * * (3) he is in custody in violation of the Constitution or laws or treaties of the United States." As the Supreme Court observed in Car-

---

10. See United States ex rel. Mathis v. Rundle, 394 F.2d 748, 750 (3rd Cir. 1968).

11. Mistakes of judgment may have been made as is usually the case, such as the failure to plead surprise and attempt to cross-examine the prisoner, who changed his story and did not clearly contradict the co-defendant's testimony.

12. The post-conviction hearing judge was entitled to accept the testimony of relator's counsel (p. 64 of 5/27/66 transcript) that it was only because relator insisted that he ask the victim if there were any particular features of relator that she observed enabling her to identify him that the questions and answers on N.T. 170–71 concerning the identifying mark on relator's thumb were mentioned. This language appears in his opinion at pp. 38–39 of the 6/10/66 transcript:

"With respect to the question of im-

proper cross-examination of Mrs. Delio, I found in the transcript of the proceedings before me on May 27th, on page 49, Mr. Pietrucha said pertaining to his examination of Mrs. Delio, 'I wanted to conclude my testimony. Only as the result of Mr. Di Rienzo audibly requesting that I ask how she identified me, did I ask any further questions.' Now, it is not unusual for a client or a defendant to make certain suggestions to his attorney and, perhaps as the circumstances presented themselves right then and there to Mr. Pietrucha, he was right in stopping. However, the defendant audibly told Mr. Pietrucha to ask her how she identified him. He went right ahead and asked the question and to use the vernacular, Mr. Di Rienzo may not be very happy with the answer, but he asked him to do it and he is bound by the result."

afas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), this "in custody" requirement is dictated "not only by the repeated references in the statute but also by the history of the great writ." 391 U.S. at 238, 88 S.Ct. at 1560. I perceive nothing in the Court's recent decisions, specifically Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) and Carafas, supra, that has diluted this requirement.

In this respect, it is essential to distinguish between the concept of "mootness" as it affects the relief available in a federal habeas proceeding and the "in custody" requirement of the federal legislation as it defines and limits the scope of the federal courts' jurisdiction over habeas corpus. It would be correct to say that the matter of mootness has generally been discarded in habeas cases where the petitioner has been released from custody before an adjudication of his claim. The reasons for this development are twofold: (1) the federal statute, § 2244(b) does not limit the court's power of relief to a "release from custody," but speaks also of any "other remedy"; (2) the courts have realistically recognized that the consequences of a criminal conviction survive the period of actual imprisonment.

The abandonment of technical notions of mootness, however, should not blur the real and persisting "in custody" limitation of our congressionally-controlled jurisdiction. It is one thing to say, as the Court did in Carafas, that once federal jurisdiction attaches, it is not dissolved by the expiration of the allegedly unlawful confinement, or as in Sibron,

that federal jurisdiction will not be defeated where it is impossible to secure federal review before release from custody because of the brief duration of the sentence, or in Rowe, that a second consecutive sentence awaiting service can be questioned prior to its commencement. But where does federal jurisdiction attach when, as here, the custody has ended long prior to the initiation of federal proceedings? He was unconditionally released from the sentence under attack on May 19, 1967. He began serving the sentence on his second conviction in January, 1968. He did not file the federal habeas petition until August 12, 1968—over fourteen months after he was released from any incarceration or parole relating to the conviction he now seeks to question.

The underlying rationale of Carafas, Rowe and Sibron was the practical and equitable determination that the writ of habeas corpus must "provide for swift judicial review of alleged unlawful restraints on liberty." Rowe, 391 U.S. at 63, 88 S.Ct. at 1554. But any judicial sloth in this case is directly attributable to the inaction of the appellant, who made his initial attempt to secure review of his conviction over four and a half years after his sentencing. Because of this delay, the petition for habeas corpus in the district court was filed over one year after appellant's unconditional release from prison. Under these circumstances, I believe that the court below was without jurisdiction to grant relief.[1]

It may be that appropriate relief should be provided by the federal courts even in such a case. If that is so, however, it is the Congress which should

---

1. Supporting this view are United States v. Meyer, 417 F.2d 1020, 1022 n. 2 (8 Cir. 1969) ; Keys v. Dunbar, 405 F.2d 955 (9 Cir. 1969) ; In re Thoresen, 395 F.2d 466 (1 Cir. 1968) and Allen v. United States, 349 F.2d 362, 363 (1 Cir. 1965). Cf. Cline v. United States, 412 F.2d 323 (5 Cir. 1969). In an opinion which does not discuss the statutory lan- guage of "custody," the Fourth Circuit suggests that "[p]etitions for the writ need not require adjudication of academic questions, but should be readily entertained if directed to a conviction which currently substantially impinges upon the applicant's liberty," Tucker v. Peyton, 357 F.2d 115, 117 (4 Cir. 1966).

fashion the enlarged jurisdictional framework to accomplish that end.

I would affirm the judgment of the district court that it was without jurisdiction to entertain this action.