**UNITED STATES of America ex rel. Max FEINBERG, H-7586, Appellant,**

**v.**

**Alfred T. RUNDLE, Superintendent, State Correctional Institution at Graterford.**

**No. 19251.**

United States Court of Appeals, Third Circuit.

Argued June 2, 1971.

Decided June 28, 1971.

David Kairys, Kairys & Rudovsky, Philadelphia, Pa., for appellant.

Peter Greenberg, Asst. Dist. Atty., (James D. Crawford, Deputy Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Appellant, a habeas corpus petitioner, appeals from the district court's refusal to issue the writ. At the time of the district court's ruling he was confined by the Commonwealth of Pennsylvania on sentences imposed on four convictions for involuntary manslaughter. He has now been paroled, but although custody has terminated we have jurisdiction to consider the appeal. Carafas v. La-Valle, 391 U.S. 234, 88 S.Ct. 1556, 20 L. Ed.2d 554 (1968); Lyons v. Brierley, 435 F.2d 1214 (3d Cir. 1970); United States ex rel. Di Rienzo v. New Jersey, 423 F.2d 224 (3d Cir. 1970). The district court, after examining the state court record, declined to issue the writ, without an evidentiary hearing.

Between December 23 and December 30, 1963 thirty-one persons living in skid-row Philadelphia died as a result of methanol, or wood alcohol poisoning. In a number of these cases the methanol was found to have come from industrial Sterno. Appellant owned and operated a tobacco shop in the skid-row area where, among other things, he sold industrial Sterno to local alcoholics for use as a beverage. Prior to 1963 the Sterno which he sold contained only 3.75% methanol. In this quantity methanol, though poisonous, was discharged from the body without causing serious harm so long as it was ingested with a larger quantity of ethyl alcohol. In 1963 the manufacturer began making a new variety of industrial Sterno containing 54% methanol. In this concentration methanol is a deadly poison. The manufacturer packaged cans of the new product with a label on the lid marked "Industrial Sterno. Danger. Poison. Not for home use. For commercial and industrial use only," and a skull and cross bones was depicted on the cans. On December 21, 1963, appellant bought from a wholesaler ten cases of the new product containing seventy-two cans each. On December 28, 1963, after hearing of a number of deaths from methyl alcohol poisoning he returned to the wholesaler four cases and forty-two cans which remained unsold. Appellant sold, or caused his employee to sell the other three hundred ninety cans.

Appellant was indicted on thirty-one bills charging involuntary manslaughter, 18 P.S. § 4703, and on thirty-one separate bills charging a violation of the Pennsylvania Pharmacy Act, Act of September 27, 1961, P.L. 1700, § 1; 63 P.S. 390–1 et seq. He was tried on all charges in April, 1965 before a judge of the Court of Quarter Sessions of Philadelphia sitting without a jury. At the conclusion of the trial he was adjudged guilty on seventeen bills of involuntary manslaughter, and on twenty-five bills charging violation of the Pharmacy Act. Sentence was imposed on five of the involuntary manslaughter counts, and was suspended on each of the other convictions. He appealed his conviction on the five counts on which he was sentenced, to the Superior Court of Pennsylvania, which affirmed on four bills and reversed on one. Commonwealth v. Feinberg, 211 Pa.Super. 100, 234 A.2d 913 (1967). He appealed that decision to the Supreme Court of Pennsylvania, which affirmed. Commonwealth v. Feinberg, 433 Pa. 558, 253 A.2d 636 (1969). Appellant then filed the petition which is now before us. Appellant contends:

(1) That the appellate courts of Pennsylvania affirmed his conviction upon a charge which was not tried in the lower court. See Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948);

(2) that there is no evidence in the state trial record which supports his conviction for involuntary man-

slaughter. See Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960);

(3) that Pennsylvania could not constitutionally make criminal the conduct disclosed in the state trial record. See Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962);

(4) that by departing in his case from rules of law previously announced the Pennsylvania courts deprived him of the equal protection of the laws.

Our examination of the state court record discloses that each of these contentions is without merit, and that the writ of habeas corpus was properly denied.

■ Appellant's first contention arises out of the circumstance that for each death he was charged both with involuntary manslaughter and with a violation of the Pharmacy Act, and that all charges were tried together. He contended in the state courts, and contends here, that he was tried for unintentional killing by doing an unlawful act, the sale of Sterno in violation of the Pharmacy Act. The Court of Quarter Sessions did find him guilty of a violation of the Pharmacy Act with respect to each of the deaths for which sentence was imposed. These convictions were, however, on separate bills charging such violations. The adjudication opinion which was filed by the trial court pursuant to Rule 46 of the Superior Court Rules treats of both the involuntary manslaughter and the Pharmacy Act charges. On appeal to the Pennsylvania Superior Court appellant contended that he could not properly be convicted of involuntary manslaughter by virtue of a violation of the Pharmacy Act because that Act did not apply to him. The Superior Court agreed, but held that he had in fact been tried and convicted for negligent involuntary manslaughter as well as misdemeanor—manslaughter. One judge dissented from that interpretation of the adjudi-

cation opinion. 234 A.2d at 920. The Pennsylvania Supreme Court carefully reviewed that opinion and concluded that the trial court did consider the issue of negligent manslaughter and did find appellant guilty of that charge.

The involuntary manslaughter bills are general in terms. Each charges that:

"Max Feinberg did unlawfully kill and slay one _____ contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

Under this form indictment the Commonwealth could establish involuntary manslaughter by showing that the defendant had committed an unlawful act causing death (misdemeanor—manslaughter), or by showing that he had engaged in a lawful act in an unlawful manner thereby causing death; that is, by showing that he so departed from prudent conduct as to evidence a disregard for human life or an indifference to consequences (negligent manslaughter). If in the trial court a defendant was notified that the state intended to prove misdemeanor—manslaughter and the trier of fact so found, an affirmance on a theory of negligent manslaughter not tried below, even though encompassed by the indictment, would present a serious due process issue under Cole v. Arkansas, *supra*. Here, however, two state appellate courts and the district court have examined the trial record and the adjudication opinion and have concluded that the negligent manslaughter charge was tried and decided by the trial court. We have made the same examination, and we agree. The adjudication opinion is not free of ambiguity — understandably, considering that thirty-one involuntary manslaughter bills and thirty-one Pharmacy Act bills were tried together without a jury. But the interpretation of that opinion by the Pennsylvania courts is entitled to some deference, and the trial record supports the finding that negligent manslaughter was tried.

In affirming the convictions the Pennsylvania Supreme Court, quoting from Thiede v. State, 106 Neb. 48, 182 N.W. 570 (1921), set forth the test for negligent manslaughter in the circumstances of one dispensing a beverage:

"\* \* \* for, if the party furnishing the liquor knows, or was apprised of such facts that he should have known, of the danger, there then appears from his act a recklessness which is indifferent to results." 253 A.2d at 641.

·The state trial record contains evidence from which a trier of fact could conclude that the appellant was apprised of such facts that he should have known of the danger of poisoning. There is proof of the causal connection between the sale of the Sterno and the four deaths here in issue, and there is proof from which the trier of fact could find that the appellant caused those deaths. The "no evidence" rule of Thompson v. Louisville, *supra* is inapplicable to such a record.

■ Appellant's next contention, that his conduct could not constitutionally be made criminal, is ingenious, but not convincing. He asserts that he has been held liable:

(1) vicariously, since an employee made some of the sales of Sterno,

(2) without knowingly creating risk of harm, even assuming he acted recklessly, and

(3) without directly causing death, because the victim's act of drinking the Sterno was in each case an intervening cause.

He argues that the eighth and fourteenth amendments, as interpreted in Robinson v. California, *supra,* impose minimum standards of criminal responsibility. *Robinson* involved the attempt by California to make criminal the mere status of being addicted. Assuming that it is authority for the proposition that there are minimum constitutional standards for criminal responsibility, this case falls well within any such standards. The Commonwealth has a clear interest in punishing those who act in reckless disregard of potential harm to others. The argument that the skid-row victims should, for purposes of criminal responsibility, be `regarded as intervening causes was answered by Justice Roberts, concurring in the Supreme Court of Pennsylvania:

"It is clear that appellant knew that the skid-row alcoholics to whom he dispensed Sterno would extract the alcohol for drinking purposes. As the majority correctly points out, our decision and the decisions below did not impose 'a duty on all sellers of Sterno to determine how their customers will use the product. The Court was merely saying that if a seller of Sterno is aware that the purchaser is an alcoholic and will use Sterno as a source of alcohol, then the seller is grossly negligent and wantonly reckless in selling Sterno to him.' " 253 A.2d at 644.

Moreover appellant has not been held vicariously liable. He has been held liable for his own acts of buying poisonous Sterno for resale and causing such resale in his store.

The foregoing discussion disposes of appellant's final contention, that by departing from rules of law previously announced Pennsylvania has deprived him of the equal protection of the laws. Appellant relies on Commonwealth v. Koczwara, 397 Pa. 575, 155 A.2d 825 (1959), cert. denied, 363 U.S. 848, 80 S.Ct. 1624, 4 L.Ed.2d 1731 (1960), which holds that a prison term may not be imposed for an offense based upon vicarious liability. Since appellant has not been held vicariously liable no equal protection issue is presented. We do not suggest that had the case involved a change in the law of Pennsylvania an issue of constitutional dimensions warranting habeas corpus relief would have been presented. We hold only that no such issue is presented here.

The judgment of the district court will be affirmed.