Darryl Palmer et al. *v.* Frederick E. Adams, Warden, Connecticut State Prison

Solomon K. Palmer, Jr., et al. *v.* State of Connecticut

House, C. J., Cotter, Thim, Shapiro and Loiselle, Js.

Argued November 4, 1971—decided February 1, 1972

*Emanuel Margolis,* with whom, on the brief, were *Julius B. Kuriansky* and *Sydney C. Kweskin,* for the appellants (plaintiffs) in each case.

*Donald A. Browne,* assistant state's attorney, with whom, on the brief, was *Joseph T. Gormley, Jr.,* state's attorney, for the appellee (defendant) in each case.

THIM, J. Solomon K. Palmer, Jr., eighteen years of age, Darryl Palmer and Arturo Palmer, both nineteen years of age, and Cary Palmer, sixteen years of age, were found guilty in November, 1968, of the crime of rape in violation of § 53-238 of the General Statutes. The record discloses these facts: On June 6, 1968, shortly after noon, the Stamford Police Department received a telephone call from a woman in Stamford reporting that she was in the process of taking her fourteen-year-old daughter to a hospital after a complaint by the daughter that she had been raped by four individuals. Police officers were immediately assigned to investigate the incident. At the hospital, the victim related to the officers that she had been forcibly assaulted by four individuals, three of whom she knew by name. Within two hours after the initial complaint had been received by the police department, the police took the petitioners into custody.

During the trial, the victim testified to the effect that at approximately 10:30 on the morning of June 6, 1968, she was walking on a public street in Stam-

ford when she came on the petitioners seated in an automobile on the street. They offered her a ride in the automobile and when she refused this offer she was forcibly taken into the automobile against her wishes. She further testified that she was taken to the attic of a home on Stillwater Avenue in Stamford and was ordered to remove her clothing. Having refused to do so, Solomon Palmer, Jr., assaulted her and she was thrown to the floor. Her clothing was removed against her will and she was forcibly raped by each of the petitioners. She was also forced to commit an indecent assault on Solomon Palmer, Jr. Thereafter, she was taken from the home, released, and ordered not to tell anyone what had happened or that further harm would come to her.

A physician who examined the victim at about 1 o'clock on the afternoon of the day of the alleged crime testified that in his opinion the victim had been forcibly raped. Numerous spermatozoa were found in the victim's vagina and her vagina was very much abused, bloody and bruised. Police testimony revealed that the undershorts of each of the petitioners were taken and forwarded to the State Toxicology Department where an examination revealed the presence of semen on each of the undergarments.

Following a jury verdict of guilty in the Superior Court, Solomon, Darryl and Arturo were sentenced to imprisonment in the state prison while Cary was sentenced to confinement at the Cheshire Reformatory. Prior to and during the trial and at the time of sentencing, all four defendants were represented by Attorney Leslie S. Stallworth. In January, 1969, through another attorney, the four defendants petitioned for a new trial pursuant to General Statutes § 52-270 and in October, 1969, Darryl, Arturo and Solomon petitioned for a writ of habeas corpus.

Thereafter, on a motion by the state, the petition for a new trial was ordered by the court to be transferred to Hartford County to be consolidated with the habeas corpus proceeding.[1] The two cases were tried simultaneously and in a judgment rendered by the court in March, 1970, both the application for a new trial and the petition for a writ of habeas corpus were denied and dismissed. Their request for certification for an appeal having been granted, the petitioners appealed to this court. Pursuant to a written stipulation of the parties, the court ordered that the appeals be combined and that only a single record be presented.

The primary issue before this court is whether the petitioners at the jury trial were denied effective representation of counsel within the meaning of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

The petitioners' application for a new trial was based on allegations that their privately retained defense counsel was inadequate and ineffective at the trial in violation of their rights of due process, that no appeal was taken because the counsel failed to provide a record on which an appeal could be based, and that the petitioners had a just defense at the time of the trial. The petition for habeas corpus was also based on the claim of inadequate and ineffective counsel. In the complaint, they alleged that by reason of the defense counsel's inexperience, incompetency and neglect he (1) failed to file appropriate and essential pretrial motions, (2) failed to challenge the jury array on the issue of cross-section of the community, (3) failed to object to and to take exception to prejudicial and inadmissible evidence,

---

[1] Subsequent to the hearings, the action for a new trial on behalf of Cary Palmer was withdrawn.

and (4) failed to take numerous other steps to provide the petitioners with an adequate and appropriate defense. Having screened the records and transcript with the proverbial "fine tooth comb," the petitioners offered approximately thirty-five claimed errors alleged to have been made by the defense counsel and which we find unnecessary to reiterate in this opinion.

With regard to this issue the law is clear. The sixth amendment to the United States constitution, applicable to the states via the fourteenth amendment, requires that "the accused shall enjoy the right . . . to have the assistance of counsel for his defence" in all criminal prosecutions. Article first, § 8, of the Connecticut constitution similarly states that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel." It is well-established law that the mere perfunctory appearance of counsel will not satisfy the constitutional mandate. *Glasser* v. *United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680. Rather, the right to counsel means that one has a right to the conscientious services of competent counsel. *Von Moltke* v. *Gillies,* 332 U.S. 708, 722-23, 68 S. Ct. 316, 92 L. Ed. 309; *Johnson* v. *Zerbst,* 304 U.S. 458, 462-63, 58 S. Ct. 1019, 82 L. Ed. 1461; *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158; *United States* v. *Wight,* 176 F.2d 376, 378 (2d Cir.), cert. denied, 338 U.S. 950, 70 S. Ct. 478, 94 L. Ed. 586. This constitutional right to timely and effective assistance of counsel is one of those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Powell* v. *Alabama,* supra, 67.

Proof of incompetent counsel is held to a stringent standard. *Musgrove* v. *Eyman,* 435 F.2d 1235, 1239

(9th Cir.) ; *United States ex rel. DiRienzo* v. *New Jersey,* 423 F.2d 224, 228 (3d Cir.) ; *United States* v. *Ballard,* 423 F.2d 127, 134 (5th Cir.) ; *Scalf* v. *Bennett,* 408 F.2d 325, 327, 328 (8th Cir.) ; *Linebarger* v. *Oklahoma,* 404 F.2d 1092, 1095 (10th Cir.) ; *United States* v. *Wight,* supra, 379. "If counsel's representation is so 'horribly inept' as to amount to 'a breach of his legal duty faithfully to represent his client's interests,' . . . there has been a lack of compliance with the fundamental fairness essential to due process." *United States ex rel. Maselli* v. *Reincke,* 383 F.2d 129, 132 (2d Cir.). In determining whether a defense counsel was competent, we must be careful in using hindsight for in "almost any case a hindsight combing of the record will reveal possible alternatives in trial tactics." *United States* v. *Ballard,* supra. The issue, therefore, "is not what counsel should have done to constitute the proper representation of . . . [the petitioners] considering the case in retrospect . . . , but rather, whether in the circumstances, as viewed at the time," the petitioners received effective assistance of counsel. *Kruchten* v. *Eyman,* 406 F.2d 304, 312 (9th Cir.). As we stated in *State* v. *Costello,* 160 Conn. 37, 40, 273 A.2d 687 : " 'Where inadequacy of counsel is alleged, . . . independently stringent requirements have become well established. Thus, we have held that relief may be obtained only when representation has been so woefully inadequate "as to make the trial a farce and a mockery of justice." . . . Errorless counsel is not required, and before we may vacate a conviction there must be a "total failure to present the cause of the accused in any fundamental respect." ' . . . 'When reviewing cases charging incompetence of counsel, we are seeking to vindicate the most fundamental of rights. We are not

conducting a seminar in trial procedures, at least where the tactics involved are those over which conscientious attorneys might differ. . . . A convicted defendant is a dissatisfied client, and the very fact of his conviction will seem to him proof positive of his counsel's incompetence.' "

While granting that errors may have been made by the defense counsel the court concluded that Attorney Stallworth adequately and competently prepared the petitioners' defense, that he rendered reasonably effective assistance and loyalty, that he displayed complete good faith and dedication to the petitioners in his presentation of their cause at the trial, that the petitioners failed to demonstrate ineffective and inadequate assistance of counsel, and that the record and transcript failed to indicate that the trial representation was a mockery of justice, a sham or a farce, perfunctory, in bad faith, or shocking to the conscience. The court further concluded that the petitioners failed to demonstrate that the specific alleged errors of omission or commission would have been effective in the trial of the case and a more effective or adequate defense would have resulted. In addition, the petitioners did not state or prove any grounds for a new trial on the evidence offered. As the court stated in its memorandum of decision and which we find particularly pertinent: "All of the claims of inadequacy or incompetence by reason of alleged errors of omission or commission previously enumerated were made without offer of proof that had counsel acted as the plaintiffs now suggest with regard to pretrial, and trial motions, trial objections and production of evidence, that a more effective or more adequate defense would have resulted. This court is left to speculate, to conjecture that such a result would have been achieved. A

reading of the record and transcript fails to indicate that the trial representation was a mockery of justice . . . . Granted that counsel may not have been errorless, in his handling of the case, and it would be difficult to find any case record in which the attorney representing a criminal defendant had made every possible motion and objection, he still rendered reasonably effective assistance and loyalty. The transcript indicates that he did not stand still and do nothing. Many of the omissions which plaintiff suggests were in fact not omitted although they were not handled exactly as the plaintiffs claimed they should have been."

To insure that justice has been done, in reviewing the court's decision, we scrutinized the entire transcript of evidence at the trial, as we may do; *State v. Costello*, supra; rather than merely review the evidence presented in the appendices to the briefs. Having made such an inquiry, we find that the court made no error in concluding that the petitioners did have counsel adequate and effective to satisfy the federal and state constitutions. We cannot say that counsel's conduct in representing the petitioners was "so incompetent or negligent as to constitute the proceedings a farce or mockery of justice shocking to the conscience of the court." *United States ex rel. Carey* v. *Rundle,* 409 F.2d 1210, 1213 (3d Cir.); see *United States ex rel. DiRienzo* v. *New Jersey,* 423 F.2d 224, 228 (3d Cir.).

Leslie S. Stallworth was admitted to the Connecticut bar in May, 1960, and, from that date, he has been actively engaged in the practice of law in this state. Prior to 1960, he had been actively engaged in the practice of law in the state of Indiana, having been admitted to that bar in 1953. In the course of his practice in Indiana and in this state during those

seventeen years, he has tried criminal cases to a jury. In Connecticut he has tried criminal cases in both the Circuit and Superior Courts.

Shortly after the petitioners' arrest, Attorney Stallworth was retained by the Palmer family to represent the petitioners, who had been charged with the crime of rape. Prior to June, 1968, he had represented Cary Palmer in connection with a proceeding in the Juvenile Court, supposedly to the satisfaction of the Palmer family who, thereafter, retained him again as counsel in the case at bar. Once retained, counsel did not "stand still" but displayed an energetic, vigorous and conscientious defense of the petitioners as evidenced by the following: The morning after he was retained as counsel, he conferred with the petitioners and on the same morning he successfully argued a motion to reduce the bail of each of the four defendants from $5000 to $1000 each. As a result, the defendants were able to post bond and they were released on bail on June 7, 1968. After their release and prior to the trial, counsel had several conferences with the petitioners and discussed in detail the charges against them and their version of what had transpired on the date of the alleged crime. At these conferences the petitioners supplied Attorney Stallworth with the names of about six prospective defense witnesses, each of whom was interviewed by counsel and called as a witness at the trial. Two other prospective witnesses were interviewed by counsel but not called as witnesses for they had stated that they knew nothing about the case. Counsel also had pretrial conferences with the police and state prosecutors, and he received from a court prosecutor the report of the doctor who had examined the alleged victim. During the trial in the Superior Court, counsel cross-

examined witnesses, made objections, took exceptions and succeeded in having a note written by the alleged victim introduced into evidence. Although overruled by the court, counsel did object to the introduction of the petitioners' undershorts into evidence.

Not having shown that counsel's representation was a mockery of justice, the petitioners may not prevail on this point. "[T]he services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every lawsuit. He made some mistakes. The printed opinions that line the wall in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one." *United States ex rel. Weber* v. *Ragen,* 176 F.2d 579, 586 (7th Cir.) ; see *Hensley* v. *United States,* 281 F.2d 605, 609 (D.C. Cir.).

The second issue is concerned with whether the joint representation of the petitioners by the same defense counsel denied the petitioners their constitutional rights to due process and a fair trial.

All the petitioners and Cary Palmer were tried together and all were represented by the same counsel, Attorney Stallworth. At the trial, the three petitioners testified in their own defense, their testimony exculpating them from criminal responsibility if the jury had believed their testimony. They testified that they had been requested by the alleged victim to give her a ride in the car, that they went to the apartment of Grace Barge and not to the attic of the

building alleged to have been the scene of the crime, that the petitioners left Cary and the alleged victim at the apartment while the three petitioners went to a store for snacks, that they had never used the attic prior to that day or on that day, that they returned to the apartment and, after waiting awhile, blew the car horn, whereupon Cary Palmer and the alleged victim came out of the apartment and entered the car, that they never saw any force used on the alleged victim, that the alleged victim had come with them willingly, that they never committed the illegal acts alleged and that they did not witness the acts committed by anyone. The state, thereupon, was permitted to introduce an oral extrajudicial statement attributed to the petitioner, Arturo Palmer, without objection by counsel. The statement was introduced in rebuttal to impeach Arturo's testimony as to where he had been and what he had seen at a particular time. The statement was clearly inconsistent with the prior testimony of Arturo and while it did not admit that the three petitioners had relations with the girl, it did say "at times they [the three petitioners] peeked over to see what Cary was doing, and he said they witnessed Cary having sexual relations with Donna."[2]

---

[2] "Arturo then said they drove to 36 Stillwater Avenue, they got out of the car, Arturo was driving, and all went to the attic at 36 Stillwater Avenue. He said that they had been there before, and they used this place with girls on different occasions.

"He said Cary, his cousin, took Donna over to another side of the attic and stayed there for about 45 minutes to an hour. He said the other three just laid around waiting for him. He then said that at times they peeked over to see what Cary was doing, and he said they witnessed Cary having sexual relations with Donna.

"He said after a short while, after the 45 minutes to an hour, they all left and went back to their car. And from there they drove Donna up to the corner of a park located on the corner of West Main Street and Fairfield Avenue and dropped her off there. They claimed that she was going over to visit some friends who were in the Village."

It is at this point that the petitioners claim that a conflict of interest arose and that error was committed by allowing a single counsel to represent all the petitioners and Cary Palmer. The petitioners contend that the principle as enunciated in *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, was violated in that "separate counsel other than counsel for Arturo Palmer, might easily and properly have raised the constitutional issue decided in the case of *Bruton* . . . that the admission of a co-defendant's statement implicating a defendant at a joint trial is harmful and prejudicial error, regardless of instructions from the court to the jury directing that the admission be used only as against the declarant." After careful analysis of the *Bruton* decision and other decisions discussing its application, we find that it has no application to the factual situation involved in the case at bar. The *Bruton* opinion stands for the limited proposition that the confrontation clause of the sixth amendment, as applied to the states via the fourteenth amendment is violated when a codefendant's out-of-court hearsay statement is admitted into evidence without the declarant being available at trial for cross-examination by the defendant. *Nelson* v. *O'Neil,* 402 U.S. 622, 626, 91 S. Ct. 1723, 29 L. Ed. 2d 222; *California* v. *Green,* 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489. This is based on the rationale that the codefendant whose confession is introduced "becomes in substance, if not in form, a 'witness' against the defendant. The defendant must constitutionally have an opportunity to 'confront' such a witness. This the defendant cannot do if the codefendant refuses to take the stand." *Nelson* v. *O'Neil,* supra. The constitution "is violated *only* where the out-of-court hearsay statement is that of

a declarant who is unavailable at the trial for 'full and effective' cross-examination." Id., 627.

We further find that even if the *Bruton* decision were to apply it would not aid the petitioners in that an examination of the record reveals to us that there was overwhelming evidence of their guilt, thereby rendering any error harmless beyond a reasonable doubt. See *Harrington* v. *California,* 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284; *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705; *United States* v. *Cale,* 418 F.2d 897 (6th Cir.); *United States* v. *Levinson,* 405 F.2d 971 (6th Cir.); *United States* v. *Sims,* 297 F. Sup. 1009 (W.D. Tenn.).

This does not end our inquiry, however, as to whether a sufficient conflict arose to violate the sixth amendment's mandate requiring effective assistance of counsel. While the petitioners' claim that the "conflict of interest was clear, present and inescapable," we find no merit to their contention. It is not error per se, much less an error of constitutional proportions, for one attorney to represent codefendants in a joint criminal trial. *United States* v. *Jones,* 436 F.2d 971 (6th Cir.); *Gardner* v. *Wainwright,* 433 F.2d 137, 139 (5th Cir.); *Baker* v. *Wainwright,* 422 F.2d 145, 148 (5th Cir.); *Watkins* v. *Wilson,* 408 F.2d 351, 352 (9th Cir.); *Kruchten* v. *Eyman,* 406 F.2d 304, 311 (9th Cir.); *Curry* v. *Burke,* 404 F.2d 65, 67 (7th Cir.); *Glavin* v. *United States,* 396 F.2d 725, 727 (9th Cir.); *Lugo* v. *United States,* 350 F.2d 858, 859 (9th Cir.); *State* v. *Costa,* 155 Conn. 304, 308, 232 A.2d 913, cert. denied, 389 U.S. 1044, 88 S. Ct. 789, 19 L. Ed. 2d 837. Before joint representation can be said to amount to a denial of the defendant's constitutional right to the assistance of effective counsel he must show that

some real conflict of interest exists between himself and the other codefendants. *United States* v. *Lovano,* 420 F.2d 769, 773 (2d Cir.), and cases cited therein. The petitioners have the burden of proving "by clear and convincing evidence that a conflict of interest exists." *Curry* v. *Burke,* supra; see *Kruchten* v. *Eyman,* supra, 312. Furthermore, there must be a real conflict of interest elevated beyond the realm of mere speculation and conjecture. *United States* v. *Gallagher,* 437 F.2d 1191, 1194 (7th Cir.); *United States ex rel. Hussey* v. *LaVallee,* 428 F.2d 457, 458 (2d Cir.); *Lugo* v. *United States,* supra.

In the case at bar, Attorney Stallworth never advised the petitioners about any possible conflict of interest which could arise due to this joint representation for, after conferring with the petitioners, he was satisfied that there was no conflict of interest present, nor would one necessarily arise. Prior to the trial, counsel had inquired as to whether the petitioners had made any statements or admissions and they indicated to him that they had not made any such statements. Unaware of the oral extrajudicial statement, there was, at least until the statement was introduced, no conflict of interest. "[U]ntil an actual conflict is shown to exist or can be reasonably foreseen an attorney may, in good faith, represent both defendants." *Kruchten* v. *Eyman,* supra.

The petitioners claim that at the time Arturo Palmer's statement was introduced, a conflict of interest arose in that: "[I]f Darryl Palmer and Solomon Palmer had had separate counsel, they could have recalled Arturo Palmer and cross-examined him as to whether he had made the statement attributed to him, and if so, whether it was accurate. Second, all of the plaintiffs, if represented separately, could have argued to the jury that they

were exculpated by Arturo's statement, and that if anyone was guilty of the crime charged, it would or might have been Cary Palmer. Third, if Arturo Palmer had had his own counsel, he might have been recalled to the stand to clarify the apparent inconsistency or deny the statement entirely, and he alone, if independently represented, might have chosen to argue his own exculpation, possibly conceding the guilt of Cary." These claims are based on conjecture and a review of the record reveals that as a matter of law no conflict of interest in fact did arise at that point or at any other point either before or during the trial. The oral, extrajudicial statement was not probative evidence, but rather, was introduced to impeach Arturo's credibility. The statement only affected Arturo Palmer and not Cary Palmer insofar as it was a prior inconsistent statement and, thus, it was not necessarily prejudicial to Cary Palmer or the other petitioners. On the stand, Arturo specifically denied those portions of the statement which inculpated Cary Palmer and under intense cross-examination he reiterated the same story which the other petitioners had told on the stand. While it may be true that counsel could not have cross-examined Arturo, it was not necessary to do so. Any cross-examination of Arturo would only have resulted in the same evidence he had already given on the stand—that he made no such statement. Since the petitioners have done no more than to suggest a mere theoretical conflict of interest situation based on surmise and conjecture and have failed to disclose the presence of a real conflict of interest which would prejudice them in the eyes of the jury, we find that their convictions were in no way influenced by their joint representation by a single counsel.

The petitioners make the further claim that Attorney Stallworth's employment as a full-time bail commissioner prevented him from exerting his 100 percent best effort in behalf of his clients in that by holding that office a conflict of interest arose. On October 1, 1968, Attorney Stallworth was appointed a full-time bail commissioner of the Circuit Court, First Circuit, pursuant to General Statutes § 54-63b. In actual practice a bail commissioner works from 8 a.m. to 5 p.m. every Circuit Court working day and on occasion during the night hours. The record reveals that while the Circuit Court's proceedings were completed long before counsel's appointment as bail commissioner, his appointment did become effective two weeks prior to the trial in the Superior Court. While undivided loyalty of counsel to a client and an atmosphere free of conflict of interest potential is essential to due process of law, we find, as did the lower court, that "no showing has been made to indicate his lack of loyalty to his client as a result of such appointment, or that a divided loyalty which affected his position of attorney existed, nor has there been a showing that such duties were prejudicial to his clients." See *Kost* v. *Cox,* 317 F. Sup. 884 (W.D. Va.); *Sinisgalli* v. *Warden,* 153 Conn. 599, 219 A.2d 724.

The petitioners also set forth other assignments of error including the court's refusal to find material facts, in finding facts without evidence and in reaching conclusions when the facts did not support them. We have carefully considered these contentions and find them to be without merit.

There is no error.

In this opinion the other judges concurred.