## Paul Moynahan *v.* State of Connecticut

SUPERIOR COURT     JUDICIAL DISTRICT     FILE No. 038855
OF WATERBURY

Memorandum filed July 24, 1974

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff.

*Walter H. Scanlon,* assistant state's attorney, for the state.

DAVID M. SHEA, J. The plaintiff, on February 4, 1970, was found guilty after a jury trial of receiving a stolen color television set in violation of General Statutes § 53-65. He was sentenced to the Connecticut Correctional Institution at Somers for a term of not less than a year and a day nor more than two years, and a fine of $500 was also imposed. The judgment was affirmed on appeal. *State* v. *Moynahan,* 164 Conn. 560. The execution of the sentence has been stayed up to the present time.[1]

---

[1] The opinion in a related case appears in 31 Conn. Sup. 296.

The occasion for this postconviction suit arose in January of this year when Mrs. Mary Niekerk, who had served on the jury which convicted the plaintiff, contacted Attorney William Secor, who had represented the state in the trial of the case, for an appointment about wills for herself and her husband. She and her husband, John Niekerk, went to the office of Attorney Secor on January 28, 1974. In the course of their meeting, Attorney Secor recognized Mrs. Niekerk as one of the jurors who had served in the trial of the case against the plaintiff. He also came to realize that her husband, whose name he had previously thought was Leo rather than John, was well known to him from various political activities in which both had participated in the town of Middlebury. He also discovered that in 1960 he had acted as attorney for Mr. and Mrs. Niekerk in the preparation of their earlier wills and, at about the same time, as attorney for the estate of Leo Niekerk, father of John Niekerk. These facts were reported promptly by Secor to the state's attorney, Francis M. McDonald, Jr.; to the chief state's attorney, Joseph T. Gormley, Jr.; and to the trial judge. The trial judge then brought the situation to the attention of the attorney for the plaintiff, who then proceeded to institute this suit.

It appears that at the start of the trial on January 13, 1970, Mrs. Niekerk, apparently in response to the customary opening statements of counsel, disclosed that she lived in the same town as Secor— Middlebury. In answer to questions asked by the trial judge, she said that she did "not really" know Secor personally and had never had any business or social engagements with him or any professional relationship. She said that her acquaintance with him would not affect her judgment and that she had never said more than "hello" to him.

On January 14, 1970, Mrs. Niekerk was drawn at a point when five jurors had been selected and the plaintiff had used four of his ten challenges. Secor began her interrogation. In response to his questions, she said that she had previously informed the court that she knew Secor. She said that her husband's first name was John and that he had a brother in Middlebury named Leo but that she had never discussed Secor with Leo. At this point Secor said that he knew Leo and that once he used to see Leo in Middlebury fairly often.

Upon examination by counsel for the plaintiff, Mrs. Niekerk said that she would not be influenced by the fact that Secor was apparently acquainted with her brother-in-law. No other questions were asked of her bearing upon this matter.

At the trial of the instant case, Mrs. Niekerk testified that at the time that she was serving on the jury she completely forgot that Secor had drawn her will and had been her lawyer ten years before. She knew that her husband was friendly with Secor. Although they belonged to the same church, she had never visited Secor's home, nor had he visited hers. She did not regard him as one of her friends.

The plaintiff claims that the effect of the non-disclosure of the lawyer-client relationship between Secor and Mrs. Niekerk as well as the political and social relationship between Secor and the juror's husband effectually deprived him of a reasonable opportunity to challenge this juror for cause or to exercise a peremptory challenge. The prayer for relief seeks to set aside the verdict of guilty, to have a mistrial declared, and to have the criminal charges against the plaintiff dismissed.

I

In several cases from other jurisdictions relied on by the plaintiff, it has been stated that a false

answer or no answer to questions asked of a juror on voir dire examination is a ground for a new trial, even though the juror acted in good faith and no actual prejudice can be shown. *Kerby* v. *Hiesterman,* 162 Kan. 490; *Olympic Realty Co.* v. *Kamer,* 283 Ky. 432; *Shulinsky* v. *Boston & M.R. Co.,* 83 N.H. 86; *Texas Employers' Ins. Assn.* v. *Wade,* 197 S.W.2d 203, 209 (Tex. Civ. App.). In some of those cases the language of the court was obiter dictum, because the facts indicated a probability of intentional falsehood and an inference of actual prejudice. *Kerby* v. *Hiesterman,* supra; *Olympic Realty Co.* v. *Kamer,* supra; *Shulinsky* v. *Boston & M.R. Co.,* supra. The doctrine of *Olympic Realty Co.* v. *Kamer,* supra, has been modified to require that the false information innocently given be of such a character as to indicate probable bias on the part of the juror. *Crutcher* v. *Hicks,* 257 S.W.2d 539 (Ky.).

"It is generally recognized that a false answer on voir dire which has the effect of depriving counsel of the opportunity to make a proper determination of whether to exercise the right to challenge a juror will not in itself require the granting of a new trial. The courts are almost all agreed that to justify a new trial it must appear that the party seeking it has been prejudiced in his case by the false answers." Note, 38 A.L.R.2d 624, 627.

In Connecticut, technical grounds for disqualification of a juror, bias or partiality not being indicated, have never been deemed sufficient to warrant a new trial. *State* v. *Brockhaus,* 72 Conn. 109, 116. The existence of an undisclosed relationship of a juror as a pensioner of the railroad company which owned all the stock of a defendant bus company was held to be insufficient to justify a new trial where the juror had apparently acted in good faith. *McCarten* v. *Connecticut Co.,* 103 Conn. 537, 545.

Even where false or incomplete answers were given in response to questions of counsel, no disqualification of the jurors involved was found where there were no intention to deceive and no actual bias. *State* v. *Kokoszka*, 123 Conn. 161, 166.

Unlike a direct relationship to a party or an interest in the outcome of a suit, which import absolute bias and require disqualification of a juror as a matter of law, the attorney-client relationship of ten years before which Mrs. Niekerk. failed to reveal does not in itself indicate partiality. *McCarten* v. *Connecticut Co.*, supra, 544. The fact that she forgot about the earlier relationship is sufficient indication that she was unaware of it during the trial and was not influenced by it. Id., 545.

## II

In recognition of General Statutes § 52-582, which bars a petition for a new trial in any civil or criminal proceeding "but within three years next after the rendition of the judgment or decree complained of," the plaintiff has chosen not to designate this action as a petition for a new trial. The relief specifically requested in the complaint of setting aside the verdict, declaring a mistrial, and dismissing the charges clearly exceeds the powers of the court at this juncture of the proceeding, when a judgment rendered over four years ago is involved. Practice Book § 254; *Tough* v. *Ives*, 159 Conn. 605, 606.

It is plain that the only remedy available to the plaintiff is a petition for a new trial, which the general prayer for relief in the complaint—"such other relief as the court deems appropriate in law"— would encompass. A petition for a new trial must allege facts which show that substantial justice was not or may not have been done. "It cannot rely on error merely technical; on the contrary, its very foundation is that a judgment technically valid is

substantially unjust." *State* v. *Brockhaus,* supra, 111. Even if the statute, § 52-582, did not bar this action, the grounds relied on by the plaintiff would not be sufficient to justify a new trial.

### III

The plaintiff argues that the complaint may be treated as a petition for habeas corpus, despite the circumstance that he is still at liberty. He claims that the grounds which he relies on demonstrate a violation of his constitutional right of jury trial and that such a constitutional claim would not be barred by any statute of limitations. *Wojculewicz* v. *Cummings,* 143 Conn. 624, 62C. Even if the procedural problems might be overlooked, it seems clear that the inadvertence of Secor and Mrs. Niekerk in failing to disclose their earlier attorney-client relationship does not constitute the basis for a claim of constitutional dimensions. In a sense, any infraction of protocol which occurs during a trial may be said to violate the guarantee of a fair trial, if the latter term be held to mean a perfect trial. It has been held, however, that even a showing of actual bias on the part of a juror would not violate the constitutional guarantee. *Kuzminski* v. *Waser,* 374 Ill. 428. A fortiori, the lack of any actual bias on the part of the juror in this case or of any deliberate concealment of the matters involved precludes a finding that any constitutional rights of the plaintiff were violated.

It is ordered that judgment enter for the defendant.