STATE OF CONNECTICUT *v.* CHRISTOPHER THOMAS

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 892

Argued June 10 – decided November 14, 1980

*Thomas Corradino,* for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

DALY, J.  After a trial to a jury, the defendant was convicted of robbery in the third degree in violation of General Statutes § 53a-136 (a), and of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).  The court denied the defendant's motion for acquittal, and the defendant has appealed claiming three errors in the charge to the jury and claiming error in the court's failure to excuse a venireman for cause.

From the evidence presented at the trial, the jury could readily have found the following facts:  On September 27, 1978, at about 3 a.m., the complainant returned to her apartment house after work and discovered that she had mislaid the keys to her apartment.  She walked to the rear of the apartment building and climbed the fire escape to her third floor apartment to attempt to enter a window, leaving her bag on the ground below.  Since this was unsuccessful she descended the fire escape and as she did, she heard a noise on the ground.  When she reached the ground, someone grabbed her around the neck from behind, threatened her, demanded money and punched her in the face.  The complainant gave her assailant $20.  Before leaving the culprit said "I am sorry, you're a nice girl, I didn't mean to hurt you, my name is Billy."  Although the whole incident lasted only five to ten minutes and the lighting in the rear of the apartment was poor, the complainant indicated that she had had a good look at her assailant's face as he fled.

The police were notified from a neighbor's telephone and the assailant was described.  The victim was taken to Yale-New Haven Hospital emergency room for treatment of her injuries.  Four days later she was unable to identify her assailant from mug shots shown to her at the police station.  On October 3, while the complainant was in a bank some three blocks from her home, she saw the defendant and recognized him as

the man who had robbed her. She observed him leave the bank with a lady companion and go across the street to a supermarket. The police were summoned and the complainant identified the defendant as her assailant. She indicated that on the morning of the episode his voice had been similar and he had been wearing the same type of hat and pants.

The defendant maintained that on the morning in question he left his girlfriend about midnight, arrived at his apartment before 1 a.m. and was in bed by 2 a.m. He also denied having ever been known as "Billy." The defendant does not contend that the incident did not occur, but steadfastly maintains that he was not the assailant.

The defendant claims first that the court erred in its charge to the jury in that it did not properly present the defendant's theory of the case and incorrectly characterized the issue that had to be decided. At the trial the defendant took an exception to the instructions on credibility on the ground that they led the jury to believe that either the defendant or the complainant was lying. The defendant maintains that neither party was intentionally lying, that this was merely a case of mistaken identity. Specifically, the defendant objects to two portions of the charge. In instructing the jury on the credibility of witnesses, the court referred to the "substantial conflict in the evidence as to the identification of the defendant as the alleged attacker." The court told the jury that they would "be interested in knowing of the rules of law pertaining to the credibility of these people and how to decide in your own good minds which of the witnesses are telling the truth." Later in the charge, by way of summing up, the court said, "[i]t will be for you to pass on the credibility of these conflicting stories and to decide who is telling the truth." The defendant contends that these charges made it appear that the identification issue turned solely on who was

telling the truth and that the jury would interpret this to mean that one of the parties was lying rather than that one version may have been inaccurate.

In reviewing a jury charge, it must be read as a whole. Individual instructions are not to be read in artificial isolation from the overall charge. *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111 (1977). The test to be applied is whether the charge considered as a whole presents the case to the jury so that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977). An examination of the charge as a whole fails to indicate that it was unfair or misleading in any way.

While it is true that in some circumstances the defendant has the right to have his theory of the defense presented to the jury; see *State* v. *Teart,* 170 Conn. 332, 335–36, 365 A.2d 1200 (1976); *State* v. *Buonomo,* 87 Conn. 285, 289, 87 A. 977 (1913); in the present case, the defendant was not denied this right. The court gave the instructions that the defendant requested on the issue of identification, stating that "[t]he burden is on the state to prove beyond . . . [a] reasonable doubt not only, one, that the crime alleged was committed, but also, two, that the defendant, Thomas, was the person who committed it." The court also emphasized that the value of the complainant's identification testimony depended upon whether she had an "adequate opportunity to make an accurate observation of the perpetrator." In light of these instructions, the charge on credibility would not have misled the jury.

The defendant claims that the court erred in its instructions to the jury that the defendant's testimony was to be measured by the same standards as that of other witnesses except that he had an evident interest in the verdict. This charge was excepted to at the trial. The rule is well settled in Connecticut that the court may advise the jury that in weighing the credi-

bility of an accused's testimony they can consider his interest in the outcome. *State* v. *Bennett,* 172 Conn. 324, 335, 374 A.2d 247 (1977). The propriety of this charge can be seen by taking into consideration the charge as a whole. The court gave several alternative formulations as to how the testimony of the accused was to be evaluated. The court instructed the jury to "apply to his testimony the same standards by which the testimony of other witnesses is measured and tested" and to "consider his interest in the case as you would consider that of any other person who has testified." If we take these statements together, the instructions are not prejudicial to the defendant. We find no error in the court's charge with respect to the considerations the jury should have in mind in testing the credibility to be given to the defendant's testimony.

The defendant also claims that the court erred in instructing the jury on the procedure to be used in analyzing the element of intent. After stating that assault in the third degree is an intent crime, the court charged as follows: "Intent is a mental process. A person's intentions may be inferred from his conduct. Every person is presumed to intend the actual and necessary consequences of his acts."

While no exception was taken in this regard, we shall consider the matter as an exceptional circumstance. An exceptional circumstance exists when the record supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial. *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant claims that the instruction violates the holdings in *Sandstrom* v. *Montana,* 442 U.S. 510, 515, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979). *Sandstrom* held

that a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts," without further explanation of the legal significance of that presumption, violates the fourteenth amendment, because a reasonable juror could have interpreted this as taking from the state the burden of proving every element of the crime beyond a reasonable doubt. *Sandstrom* v. *Montana,* supra, 515. The charge on intent in the present case, however, is virtually identical to that upheld in *State* v. *Arroyo,* 180 Conn. 171, 177, 429 A.2d 457 (1980). The attacked sentence, when considered within the context of the entire charge, including explanatory instructions on inferences and circumstantial evidence, could not reasonably be construed to require a conclusive presumption or a shifting of the burden of proof and did not deprive the defendant of his due process right to a fair trial. *State* v. *Maselli,* 182 Conn. 66, 75, 437 A.2d 836 (1980); *State* v. *Arroyo,* supra, 180.

The defendant's final assignment of error involves the court's refusal to excuse a venireman for cause. Venireman number 14 had had some prior associations with the New Haven Legal Assistance Association which employs defense counsel. The New Haven Legal Assistance Association has represented in the past and is representing now parties who have been sued by the employers of venireman number 14. Despite this contact the venireman stated, "I think I could be fair." The trial court refused to excuse him for cause and the defendant, in challenging him, exhausted his remaining peremptory challenge. The defendant maintains that he would have excused the next venireman, number 33, if he had had any peremptory challenges left, and therefore claims error.

At common law, a challenge for bias or prejudice could be either a principal challenge or a challenge to

the favor. "Of the former, were relationship to either party to the suit, a former service as arbitrator on either side, an interest in the outcome of the suit, either personal or as a member of a corporation, or the relation of master or servant, steward, attorney, landlord or tenant to either party, or that the prospective juror has conversed with either party upon the merits of the case, or has formed or expressed an opinion on the question at issue. Such facts being proved, the disqualification was conclusively presumed. It was a legal conclusion and it could not be rebutted." *McCarten* v. *Connecticut Co.,* 103 Conn. 537, 542, 131 A. 505 (1925).

"Challenges for favor were founded on probable circumstances of suspicion, as for example, particular friendship, or enmity, or such other facts as would tend to show bias but did not create a conclusive presumption of disqualification." *McCarten* v. *Connecticut Co.,* supra, 542–43. The emphasis on relationship to a "party" in a principal challenge is readily apparent from this definition.

If we consider this as a principal challenge as the defendant has, we note that venireman number 14 is not related to the defendant, has no interest in the outcome of the case, and has no connection with either party to the action of "so close a nature that, when the facts concerning it are proved, the disqualification is conclusively presumed to exist." *State* v. *Kokoszka,* 123 Conn. 161, 164, 193 A. 210 (1937).

Considering this challenge as a challenge for favor, the court had the discretion to disqualify the juror if it had reason to believe that due to his bias or prejudice he could not give the parties a fair trial. But in exercising its discretion, the court "ought not to indulge any unreasonable and groundless suspicion of a party." *McCarten* v. *Connecticut Co.,* supra, 543. Where the relationship in question is that between a juror and an attorney, courts have often found it

unnecessary to disqualify the juror. In a case where the prosecutor had been counsel for a juror, the court found that an attorney-client relationship ten years earlier did not in itself reveal partiality and require disqualification of a juror as a matter of law because there was no direct relationship to a party or interest in the outcome of the suit. *Moynahan* v. *State,* 31 Conn. Sup. 434, 438, 334 A.2d 242 (1974). Venireman number 14 indicated that he would be fair when questioned on the voir dire. There is nothing in these facts which would require a conclusion that the juror was biased so that he could not render an impartial verdict.

There is no error.

In this opinion SHEA and BIELUCH, Js., concurred.