# State of Connecticut *v.* Richard Moffett

Appellate Session of the Superior Court

File No. 994

Argued June 22—decided October 2, 1981

*M. Fred DeCaprio,* for the appellant (defendant).

*Mark S. Solak,* deputy assistant state's attorney, for the appellee (state).

DALY, J.  A jury convicted the defendant of being an accessory to the crime of criminal mischief in the second degree in violation of General Statutes § 53a-8 and § 53a-116.  From the judgment rendered, the defendant has appealed, claiming that the trial court erred by (1) allowing the defendant to be represented by out-of-state counsel without first complying with Practice Book § 24; (2) denying the defendant effective assistance of counsel; (3) permitting the state to file a substitute information without allowing the defendant to move for a bill of particulars or granting the defendant a reasonable continuance; (4) failing to charge the jury properly on the elements of intent essential to convict the defendant as an accessory; (5) refusing to grant the defendant's motions for a mistrial and a new trial on the basis of a juror's non disclosure of information on voir dire; and (6) denying the defendant's motion to voir dire the jury after its verdict.

The jury could readily have found the following facts: Between 6 p.m. on the evening of October 31, 1979, and 6 a.m. the following morning, vandals used spray paint to deface the Levonius premises located on Packer Road in Canterbury.  Several days later, the police received an anonymous phone call which prompted them to question Lance Delpriore, Joel Brown and Robert Plante about the incident.  Confessions by Delpriore and Brown involved Plante in the incident, and the trio were arrested.  The three subsequently implicated the defendant as having paid them to spray paint the Levonius house, garage and driveway.  The defendant was ultimately charged with conspiracy to commit criminal mischief in the second degree in violation of General Statutes §§ 53a-48 and 53a-116.  With the permission of the court,

Stephen Nugent, a Rhode Island attorney, represented the defendant at trial, which began on March 12, 1980.

## I

The defendant first claims that the trial court erred when, without complying with § 24 of the Practice Book, it permitted an out-of-state attorney to practice law in Connecticut. Section 24 affords the court discretion to allow an out-of-state attorney to practice in Connecticut "for good cause shown upon written application presented by a member of the bar of this state . . . ." The transcript does not disclose that when permission to represent the defendant was granted the Rhode Island counsel, either "good cause" was shown or a "written application presented" to the trial court. Nevertheless, the defendant himself moved for Attorney Nugent's admission to represent him at trial.[1] Therefore, any result which ensued was induced by the defendant, and an action induced by the defendant cannot be made a ground of error. *State v. Cobbs*, 164 Conn. 402, 424, 324 A.2d 234 (1973); *Crowder v. Zion Baptist Church, Inc.*, 143 Conn. 90, 98, 119 A.2d 736 (1956). Accordingly, we find no reversible error in the trial court's permitting out-of-state counsel to represent the defendant.

## II

The sixth amendment to the federal constitution guarantees that "the accused shall enjoy the right . . . to have the assistance of counsel for his defense" in all criminal proceedings. Article first, § 8 of our state constitution mandates that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." This constitutionally guaranteed right to counsel embodies

---

[1] Moreover, the transcript indicates that although a Danielson public defender, Attorney Ramon J. Canning, was available to sit at the defense counsel's table, the defendant apparently did not seek Attorney Canning's assistance.

the right to the conscientious services of counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167 (1976). The reasonably competent criminal attorney, however, is not expected to provide his client with flawless representation. *State* v. *Barber,* 173 Conn. 153, 161, 376 A.2d 1108 (1977). Lawyers with ordinary training and skill will make some errors during the course of a trial. Id. In examining whether the defendant received constitutionally sufficient representation of counsel, we must determine whether his representation was adequate, as viewed at the time of trial, and not in retrospect. *Palmer* v. *Adams,* 162 Conn. 316, 321, 294 A.2d 297 (1972).

## A

The defendant contends that he was deprived of effective assistance of counsel because his attorney failed to file any pretrial motions. Specifically, he avers that his attorney should have filed a motion to dismiss the information to test the legal sufficiency of the affidavit that formed the basis of his arrest warrant.

Nothing in the record before us indicates that the defendant's attorney failed to represent his client adequately in this respect. The affidavit supporting the arrest warrant was based upon the admissions of two active participants and the observations of a police officer who was at the scene. Thus, although the supporting affidavit was in part based on hearsay, the judicial officer who issued the arrest warrant had been apprised of the underlying circumstances upon which the informants had relied when providing information to the affiant. *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

Moreover, the issuing officer had before him sufficient information to credit the informants' statements

as reliable. The affidavit contained far more than the mere recital of conclusions. From it a judicial officer could deduce substantial corroboration of the informants' statements. Corroboration exists where information from various sources coincides. *State* v. *Jackson,* 162 Conn. 440, 447, 294 A.2d 517 (1972). In this case, the affiant's own knowledge of the events implicitly confirmed particulars in the informants' statements such as location, occurrence and conduct of the incident. *Draper* v. *United States,* 358 U.S. 307, 313, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959); *State* v. *Jackson,* supra, 447. Finally, statements of informers, made against their penal interests, are inherently credible. *United States* v. *Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). Thus, the warrant, although based on hearsay, appeared to rest upon a sufficient basis. Reasonably competent counsel could have concluded that filing a motion to dismiss in this circumstance would be unnecessary and futile, and we, therefore, believe that the defendant's attorney did not deprive his client of effective assistance of counsel by failing to do so.

## B

The defendant contends that he was denied effective assistance of counsel because his attorney failed to request the court to instruct the jury that an adverse inference might be drawn from the state's failure to produce Robert Plante, an alleged principal in the crime. At the time of trial, Plante was serving as a member of the United States Air Force and was stationed in Texas.

The mere failure to produce a particular person is insufficient to raise an adverse inference. An inference, in this circumstance, is appropriately drawn where (1) it would otherwise have been natural for a party to produce a particular person and (2) the particular witness is available. *State* v. *Brown,* 169 Conn. 692, 704, 364 A.2d 186 (1975). A witness who would

naturally be produced by a party is one known to that party who, by virtue of his relationship to that party or issue could reasonably be expected to have peculiar or superior information favorable to his case. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). To prevent needless expense and inconvenience, however, an adverse inference should not arise where a potential witness, whose testimony is relatively unimportant, cumulative or inferior to what has been offered, has not been called to testify. In either case, when a witness who is not called is equally available to either party, no adverse inference may be drawn by either. *State* v. *Brown,* supra, 705; 2 Wigmore, Evidence (3d Ed.) § 287.

A party claiming the benefit of an adverse inference must prove his entitlement to it. *State* v. *Olds,* 171 Conn. 395, 403, 370 A.2d 969 (1976). Plante was equally available to both parties; the defendant may not, therefore, claim an adverse inference from the state's failure to call him. Moreover, it is likely that even if the state had called Plante, he would have exercised his fifth amendment right not to testify. In any event, his testimony, at best, would have been cumulative and could reasonably have been omitted given the expense and inconvenience of arranging to bring him from Texas in accordance with General Statutes § 54-82i (c).[2] On these facts, we are not persuaded that the defendant was entitled to claim the benefit of an adverse inference, and cannot fault his attorney for failing to request such instruction.

---

[2] General Statutes § 54-22 (c) (now § 54-82i [c] ) provides: "If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions . . . in this state, . . . a judge of such court may issue a certificate . . . [which] may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state . . . ." The Texas legislature has, by statute, authorized its judges to deliver to a sister state a person who is a material witness and whose presence is required in that state. Tex. Code Crim. Proc. Ann. art. 24.28 (Vernon 1981).

## C

The defendant avers that because his counsel failed to preserve the record for appeal, he was deprived of effective assistance of counsel. The record indicates that counsel took exceptions to adverse rulings made by the trial court during his cross-examination of certain state's witnesses. To preserve the record for appellate review, Practice Book § 288 requires only that "counsel shall state the grounds upon which [his objection] . . . is made, succinctly and in such form as he desires it to go upon the record . . . . An exception to the ruling must be taken in order to make it a ground of appeal." The defendant's attorney adequately preserved his ground for appeal by timely excepting to the court's rulings.

The defendant further claims that his attorney erred by failing to request the court reporter to record final arguments. To prevail on this claim, the defendant must prove that his counsel's conduct fell below the range of competence displayed by lawyers with ordinary training and skill and that this lack of competence contributed to his conviction. *Siemon* v. *Stoughton*, 184 Conn. 549, 554, 440 A.2d 210 (1981). Counsel's conduct in this regard did not deviate significantly from that of Connecticut attorneys, who do not generally request the transcribing of closing arguments.

To prove incompetent representation by counsel, the defendant must meet a stringent standard. If counsel's representation is so horribly inept as to constitute a breach of his legal duty faithfully to represent his client's interest, there has been a deprivation of the fundamental fairness essential to due process. In assessing the competency of trial counsel, how ever, we must avoid using hindsight, for in almost any case, a hindsight perusal of the record discloses any number of alternative trial tactics. *Palmer* v. *Adams*, 162 Conn. 316, 321, 294 A.2d 297 (1972). The focus,

then, is not upon what counsel should have done to provide the proper representation, but whether in the circumstances, viewed at the time, the defendant received adequate assistance of counsel. An attorney "is not required to be infallible. We know that some good lawyer gets beat in every lawsuit . . . . The printed opinions that line the walls in our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one." *United States ex rel. Weber* v. *Ragen,* 176 F.2d 579, 586 (7th Cir. 1949). We do not find that counsel's representation was incompetent. *Palmer* v. *Adams,* supra, 320.

## III

The defendant next contends that the trial court erred by allowing the state to amend the charge against the defendant and by requiring him to come to trial without affording him the opportunity to move for a bill of particulars or allowing him a continuance to prepare a defense to the new charge. Although the defendant originally pleaded not guilty to the charge of a conspiracy to commit criminal mischief in the second degree, on the day the trial commenced, the court allowed the state to file a substitute information charging the defendant with being an accessory to the crime of criminal mischief in the second degree. The court overruled the defendant's objection to the substituted information and denied the defendant's request both for permission to file a motion for a bill of particulars and for a continuance to prepare a defense to the new charge.

As embodied in General Statutes § 53a-48, the offense of conspiracy requires proof of both an unlawful combination and an act done pursuant thereto. It is unnecessary to prove either the existence of a formal agreement or the accomplishment of an established purpose. Conspiracy occurs when two or more individuals knowingly engage in a mutual plan to do a forbidden act. *State* v. *Holmes,* 160 Conn. 140, 149,

274 A.2d 153 (1970). To establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another, the prosecution must prove criminality of intent and community of unlawful purpose. General Statutes § 53a-8. It is not enough that the accused committed acts which may in fact have aided the commission of a criminal act; "[o]ne who is present when a crime is committed but neither assists in its commission nor shares in the criminal intent of the perpetrator cannot be convicted as an accessory." *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650 (1967); *State* v. *Teart,* 170 Conn. 332, 336, 365 A.2d 1200 (1976).

Practice Book § 626 affords the court discretion to grant a continuance reasonably necessitated by an amended information. Whether the refusal to grant a continuance is so arbitrary as to violate the due process rights of the movant depends upon the circumstances present in each case and the reasons presented to the trial judge when the request was denied. *State* v. *Olds,* 171 Conn. 395, 402, 370 A.2d 969 (1976). In this case, despite the amendment, the underlying factual situation remained unchanged as did the basic charge of criminal mischief in the second degree. It does not, therefore, appear that the defendant's case grew substantially more complicated as a result of the amendment. In fact, the amendment imposed a greater burden upon the state. We find that the denial of the request for a continuance was within the sound discretion of the court.

A motion for a bill of particulars is also addressed to the sound discretion of the court. An abuse in the exercise of this discretion can be premised only upon a clear and specific showing of prejudice to the defense. *State* v. *Brown,* 173 Conn. 254, 257, 377 A.2d 268 (1977). The defendant has the burden of showing why the additional particulars were necessary to the preparation of his defense. *State* v. *Hauck,* 172 Conn.

140, 151, 374 A.2d 150 (1976). In a criminal case, the function of the bill of particulars is to provide information necessary for the accused to understand the charge against him and to prepare his defense without encountering prejudicial surprise at trial. *State* v. *Coleman,* 167 Conn. 260, 269, 355 A.2d 11 (1974). The. defendant had complete access to the state's file at all times. We, therefore, conclude that the trial court did not abuse its discretion when it denied the defendant's motion for a bill of particulars.

## IV

The defendant contends that the trial court erred in its instructions to the jury on the elements of intent necessary for conviction as an accessory. Citing *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *State* v. *Harrison,* 178 Conn. 689, 425 A.2d 111 (1979), the defendant argues that the instructions impermissibly shifted to him the burden of proof on intent. Because the charge here was cast in terms of permissive inferences rather than mandatory presumptions, we find that the charge did not offend the holding in either *Sandstrom* or *Harrison.* The instructions did not shift the burden of proof, and the trial court, therefore, did not commit error in charging the jury. *State* v. *Brokaw,* 183 Conn. 29, 34, 438 A.2d 815 (1981).

The defendant also contends that the charge given was legally inadequate because it did not sufficiently guide the jury as to what intent was necessary to support a finding of guilty. The accessory statute requires two types of intent. The accessory must intend (1) to aid the principal and (2) to commit the offense with which he is charged. *State* v. *Harrison,* supra, 694. In evaluating a charge, we must look at the instruction as a whole, and not sever one portion to analyze it in isolation. *State* v. *Truppi,* 182 Conn. 449, 458, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981).

The charge, in its entirety, must present the case to the jury so that no injustice will result. *State* v. *Thomas,* 37 Conn. Sup. 520, 523, 424 A.2d 1083 (1980). An examination of the charge discloses that the court used clear language concerning the dual aspect of the intent requirement under an accessory charge, and specifically tied that intent to the offense of criminal mischief in the second degree by making direct reference to the underlying offense. The charge, as a whole, appears neither unfair nor misleading.

V

The defendant further claims that the trial court erred by refusing to grant a mistrial when, during the course of the jury's deliberation, the defendant became aware that a juror had been involved in a prior criminal matter, but had not disclosed the prior involvement on voir dire. Specifically, the juror's daughter had been a homicide victim, and the defendant in the homicide proceeding had been discharged from prosecution because his confession had been suppressed.

The court has discharged a jury and directed a new trial where it has discovered juror bias during the course of trial. *State* v. *Roy,* 182 Conn. 382, 386, 438 A.2d 128 (1980). To succeed on a claim of jury bias, however, the defendant must raise his contention of bias from the realm of speculation to the realm of fact. *State* v. *Bowen,* 167 Conn. 526, 532, 356 A.2d 162 (1975). Applying this standard, the court has held that a prior attorney-client relationship between prosecutor and juror did not, of itself, indicate bias and require disqualification of the juror, because the juror was neither directly related to nor interested in the outcome of the suit. *Moynahan* v. *State,* 31 Conn. Sup. 434, 438, 334 A.2d 242 (1974). Moreover, a false answer on voir dire, which effectively deprived counsel of the opportunity to decide

whether to exercise a juror challenge, did not of itself require the granting of a new trial. Even where false or incomplete answers were given in response to questions of counsel, the court did not disqualify a juror where no actual bias or intent to deceive existed. Id., 439.

Furthermore, it is equally possible that, rather than being vindictive against an accused, a father could be embittered against the state for failing to convict one accused of murdering his daughter. The defendant has not, however, elevated this possibility to fact. The court has wide discretion in passing on motions for mistrial. *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221 (1971). We find no abuse of discretion.

## VI

Finally, the defendant claims that the trial court erred in denying him the right to voir dire the jury after it rendered a verdict. The court may accept testimony from jurors concerning the existence of an extraneous influence, but it may not receive evidence as to the effect this influence may have had on the deliberations or on the mental process of any one juror or group of jurors. *Aillon* v. *State,* 168 Conn. 541, 549, 363 A.2d 49 (1975). In this case, the possibility of extraneous influence had already been brought to the trial court's attention, and it could not receive evidence concerning any possible influence on jury deliberations or on the mental process of any juror. The trial court must apply an objective test, assessing for itself whether there is a likelihood that the influence would affect a jury outcome. We find no abuse of discretion.

There is no error.

In this opinion SHEA and BIELUCH, Js., concurred.