STATE OF CONNECTICUT *v.* RYAN MYERS
(SC 15208)

Callahan, C. J., and Borden, Berdon, Palmer and McDonald, Js.

Argued March 18—officially released July 29, 1997

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, assistant state's attorney, with whom were *Elpedio Vitale*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

BERDON, J. Following a jury trial, the defendant, Ryan Myers, was convicted of felony murder in violation of General Statutes § 53a-54c,[1] robbery in the first degree in violation of General Statutes §§ 53a-8[2] and 53a-134 (a) (4),[3] conspiracy to commit robbery in the

[1] General Statutes § 53a-54c provides in relevant part: "Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[2] General Statutes § 53a-8 provides: "Criminal liability for acts of another. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm, as defined in subdivision (19) of section 53a-3, to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-134 provides: "Robbery in the first degree: Class B felony. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a),[4] and attempted assault in the first degree in violation of General Statutes (Rev. to 1993) § 53a-59[5] and General Statutes §§ 53a-49[6] and 53a-

[4] General Statutes § 53a-48 provides in relevant part: "Conspiracy. Renunciation. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

[5] General Statutes (Rev. to 1993) § 53a-59 provides: "Assault in the first degree: Class B felony. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person.

"(b) Assault in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[6] General Statutes § 53a-49 provides: "Criminal attempt: Sufficiency of conduct; renunciation as defense. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

8. Although the defendant raises several issues in this appeal, at this time we reach only the procedural aspects of his claim for a new trial predicated on juror bias and remand the case to the trial court for further proceedings.[7]

On June 8, 1994, the jury rendered a verdict of guilty on all counts. On June 27, 1994, prior to sentencing, the defendant filed a motion captioned "motion for a new trial" (motion) on the basis of juror bias. In the motion, the defendant sought a new trial and the motion set forth its basis, together with an appendix containing photocopies of certain relevant newspaper articles.[8] In

(5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[7] The defendant raises several other issues on appeal, which we will consider after this court receives the trial court's articulation as ordered in this opinion. Those issues are that the trial court improperly: (1) (a) refused to allow the defendant to cross-examine the state's key witness regarding the witness' confinement as a material witness and that witness' arrest for the charged offenses, (b) excluded a statement inculpating the state's key witness, and (c) refused to allow cross-examination in conformity with State v. Whelan, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); and (2) (a) admitted into evidence a black jacket that, because it could not be linked to the defendant, was irrelevant and whose admission into evidence was more prejudicial than probative, and (b) refused to allow the defendant to offer evidence of a similar black jacket seized from the state's key witness, thereby denying the defendant his right to present a defense and to cross-examine that witness about the second jacket.

[8] The defendant's motion, excluding the appendix that contained two newspaper articles, provided as follows:

the last paragraph of his motion, the defendant requested that the trial court *also* consider it as a "petition for a new trial," in accordance with General Statutes § 52-270.[9] On September 19, 1994, the trial court held an evidentiary hearing on the defendant's claims

"MOTION FOR A NEW TRIAL

"The defendant in the above captioned matter, hereby moves the Court for a new trial, upon the following bases:

"1. The foreperson of the jury was Richard Gay. Since the time the verdict in this matter was handed down, the defense has found information that he was the victim of a beating on or about Thursday April 29, 1993. Upon information and recollection (a copy of his voir dire testimony has been ordered) Mr. Gay was asked whether he had ever been the victim of a crime and other questions in that line and he replied in the negative. Attached hereto are copies of articles from the New Haven Register which outline the following events. A motorcyclist was killed when he slammed into the back of a vehicle, operated by Mr. Gay, while the car was stopped at a red light on Dixwell Ave. at its intersection with Webster Street. After the above described collision, a crowd of onlookers beat and kicked Mr. Gay resulting in Mr. Gay's being taken by ambulance to Yale-New Haven Hospital. Gay was quoted in the New Haven Register dated May 1, 1993:

" 'The law is easing up too much on these kids—they're not good for anything and the law should kick their . . . .'

"The failure of this venireperson to disclose this information in response to pertinent voir dire questions by counsel deprived the defendant from a fair and impartial jury in violation of the due process and equal protection guarantees of both the Connecticut and federal constitutions.

"2. The court's decision to not allow the defense to put into evidence the fact that one Andre Rogers, a state's witness whose statements to detectives were put into evidence for substantive purposes, was accused of felony murder and other charges arising from the murder subject of this case, entitles the defendant to a new trial. *Davis* v. *Alaska,* 415 U.S. 309 [94 S. Ct. 1105, 39 L. Ed. 2d 347] (1974); Article I, Section 8 and 9 of the Connecticut constitution; Sixth Amendment to the U.S. constitution.

"3. In light of newly discovered evidence concerning the jury foreperson, Richard Gay, the defendant also requests the court to also consider the arguments expressed herein as a petition for a new trial in accordance with [General Statutes § 52-270] and order an evidentiary hearing concerning the newly acquired information contained herein."

[9] General Statutes § 52-270 provides: "Causes for which new trials may be granted. (a) The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to

of juror bias, and concluded the hearing on January 9, 1995. At no time prior to the trial court's decision on the motion did the state object to the procedural posture of the motion.

On October 24, 1994, before the completion of the hearing and the subsequent ruling on the defendant's motion, the trial court sentenced the defendant to a total term of 100 years imprisonment. The trial court stated that it sentenced the defendant before deciding his motion in order to ensure that there would be appellate review of the court's decision on the motion.[10] On March 17, 1995, the trial court granted the defendant's motion for a new trial. On March 27, 1995, the state moved for reconsideration of that decision, arguing for the first time that the defendant's claim of juror bias was raised in a procedurally defective manner. Because the defendant had failed to institute a separate proceeding by way of a petition for a new trial, pursuant to § 52-270, by serving a writ and complaint on the state; see *State* v. *Asherman*, 180 Conn. 141, 144, 429 A.2d 810 (1980); *State* v. *Servello*, 14 Conn. App. 88, 101, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988); the state argued that the defendant's petition was improperly brought and, consequently, that the state was deprived of its right to appeal from the trial

appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action.

"(b) An affidavit signed by any party or his or her attorney shall be presumptive evidence of want of actual notice."

In addition, Practice Book § 904 provides: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with Gen. Stat., § 52-270. The judicial authority may grant the petition even though an appeal is pending."

[10] See footnote 14 of this opinion.

court's order granting a new trial. The trial court agreed with the state and vacated its order granting a new trial.

On appeal, the defendant argues that the trial court improperly vacated its order granting the defendant a new trial on the ground, inter alia, that the defendant should have raised the issue of juror impartiality by way of a properly instituted proceeding on a petition for a new trial pursuant to § 52-270. The state argues that the trial court acted properly and, also, as an alternative ground on which to affirm the judgment of the trial court, that the defendant failed to establish that he was actually prejudiced by the juror's failure to disclose pertinent information. We agree with the defendant that the trial court improperly concluded that the issue of juror bias in this instance must have been raised by a petition for a new trial brought pursuant to § 52-270. We must, however, remand the case to the trial court for an articulation as to whether the trial court found actual bias.

The following undisputed facts recited by the trial court are relevant to the resolution of the issue raised by the defendant's motion. "The issue raised by the defendant in his motion for a new trial, which was filed prior to the sentencing of the defendant, is that the juror, Richard Gay, who turned out to be the foreperson, had been involved in an incident about thirteen months prior to his selection as a juror and made no mention of it at any time during the process of jury selection or at any time thereafter. According to the testimony of [Gay] given in the course of the evidentia[ry] hearing held by the court on September 19, 1994, he made no mention of this occurrence because he did not think it was relevant. [He testified that] '[i]t had no bearing on anything.' . . . And when asked if anybody he knew, [or a] family member, had ever been the victim of a crime, his response had been 'No' because 'a family member' 'didn't mean me.' . . . Had he been asked the

specific question as to himself and any experience with being a victim of a crime, he would have answered differently. . . .

"Evidence was offered by way of newspaper articles in the New Haven Register of May 1, 1993 . . . [to which Gay testified] of an occurrence in which he was assaulted by a number of youths following an automobile accident in downtown New Haven in which he either was pulled out of his car or got out and was thereafter subjected to an assault which required overnight hospitalization. In a subsequent interview by a Register reporter he was quoted as saying that the law was easing up too much on these kids, they're not good for anything and the law should kick their . . . .[11] The defendant in this case is a young black male residing in New Haven and in the opinion of the court would fit generally within the class of the individuals allegedly referred to by [Gay]. These statements were denied by [Gay] in that he claimed not to recall specifically what he told the reporter but that he did recall wanting the police to investigate the incident. [Gay] also indicated . . . that he wanted the police to investigate because he had been 'beat up,' although he claimed not to remember the assault at the time of the hearing on this motion.

"The question raised by the defendant in the face of this information is whether [Gay] should have disclosed this information as bearing upon his ability to be fair and impartial in sitting as a juror on this case. The state claims that no actual bias has been shown and that when asked the question whether any family member had been the victim of a crime, he truthfully answered as to others of the family, but because he was not

[11] We note that one of the newspaper articles presented to the trial court also quoted Gay as stating, among other things, the following: "These people are out on the street corners, selling drugs all day. They're not educated—they only know if you hurt my homeboy, I'm going to hurt you back."

specifically asked whether *he* had been a victim of a crime he had no duty to volunteer the incident of April 29, 1993 . . . ." (Emphasis in original.)

I

We first address whether the trial court properly vacated its decision granting the defendant's motion for a new trial based upon its conclusion, inter alia, that the defendant's claim was required to have been brought by way of a properly instituted proceeding on a petition for a new trial pursuant to § 52-270. The state argues that the defendant's claim of juror bias was initiated through a procedurally defective petition for a new trial. The defendant counters that his motion for a new trial, brought pursuant to Practice Book § 902,[12] properly raised his claim of juror bias. We agree with the state that the defendant's motion was not a properly brought petition for a new trial, but we also agree with the defendant that a claim of juror bias may be brought either by way of a motion for a new trial pursuant to § 902 of the Practice Book or a petition for a new trial pursuant to § 52-270.

The state relied on *State* v. *Servello*, supra, 14 Conn. App. 100–102, for its argument before the trial court that the defendant's petition for a new trial was procedurally defective. The state renews this argument on appeal.

[12] Practice Book § 902 provides: *"Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice.* Unless the defendant's noncompliance with these rules or with other requirements of law bars his or her asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him or her.

"If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment." (Emphasis added.)

A petition for a new trial is properly "instituted by a writ and complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding." *State* v. *Asherman,* supra, 180 Conn. 144. In *State* v. *Servello,* supra, 101, the Appellate Court noted that the defendant did not follow that procedure and that "[t]he defendant filed his 'petition for new trial' within the technical confines of the docketed criminal case. No separate civil action was brought." The court in *Servello* indicated that "[w]e are presented, then, with the question of whether the defendant's failure to bring a petition for a new trial in a separate action deprived the trial court of subject matter jurisdiction to rule on the petition. . . . [T]he trial court should have dismissed the defendant's petition for a new trial because it was improperly brought, and we do not review the trial court's denial of that petition." Id., 101–102; see also *State* v. *Smith,* 15 Conn. App. 502, 503, 545 A.2d 1150 (1988); *State* v. *Saraceno,* 15 Conn. App. 222, 250–51, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 430, 431 (1988). The motion in the present case clearly does not meet the requirements of a petition for a new trial because it too was filed within the confines of the criminal case.

Nonetheless, we construe the defendant's motion as a motion for a new trial, pursuant to Practice Book § 902, even though he alternatively sought a new trial pursuant to § 52-270. Although not dispositive, the motion was clearly captioned "motion for a new trial" and the defendant filed his motion prior to final judgment.[13] Further, the trial court captioned its written decision on the motion as a "memorandum of decision on *motion* for new trial" (emphasis added), although the trial court also made reference to § 52-270 in its decision. We conclude that the motion was a motion

---

[13] See footnote 8 of this opinion.

for a new trial pursuant to Practice Book § 902 and not a petition for a new trial.

The trial court indicated, in its oral decision vacating its previous order granting the defendant's motion for a new trial, that its "ruling on the defendant's motion after imposing sentence was improper, and that the issue of a juror's impartiality must be addressed by way of a petition for a new trial." The trial court stated that the defendant's motion "obviously . . . falls short of being a petition that's required under [§ 52-270] . . . ." In addition, the trial court indicated that it had sentenced the defendant and then ruled on the defendant's motion under the assumption that its decision granting the defendant a new trial would be appealable by the state before any retrial.[14] Notwithstanding this procedural quagmire, the trial court retained jurisdiction to entertain the motion for a new trial after sentencing[15] because it could have opened the judgment. See *State* v. *Wilson*, 199 Conn. 417, 436, 507 A.2d 1367 (1986) ("during the continuance of a term of court the judge holding it has, in a sense, absolute control over judgments rendered; that is, he [or she] can declare and subsequently modify or annul them" [internal quotation marks omitted]).[16]

---

[14] Although it is true that the state could not appeal the trial court's granting of a motion for a new trial, this is not a valid reason to vacate a previous order granting a motion for a new trial. "A motion for a new trial is interlocutory and an appeal lies only from the judgment to which the motion is addressed." *State* v. *Asherman*, supra, 180 Conn. 143. In other words, once a trial court has granted a motion for a new trial, the state must wait until final judgment has been rendered in the retrial before it can appeal the granting of the new trial.

[15] It is a "well-established rule that [i]n a criminal case, the imposition of sentence is the judgment of the court." (Internal quotation marks omitted.) *State* v. *Asherman*, supra, 180 Conn. 146.

[16] See Practice Book § 326 (any civil judgment may be opened or set aside when motion to open or set aside is filed within four months of entry of judgment); *State* v. *Wilson*, supra, 199 Conn. 437 (applying § 326 to criminal cases for purposes of determining when trial court may modify or vacate judgments).

It is true that this court has stated, as a general matter, that "the purpose of a hearing on a § 902 motion for a new trial is to determine whether *the court, in the course of the trial, committed error* and thereby deprived the defendant of a fair trial . . . ." (Emphasis added.) *State* v. *Synakorn*, 239 Conn. 427, 435, 685 A.2d 1123 (1996); see also *State* v. *Jones*, 205 Conn. 723, 730, 535 A.2d 808 (1988). Moreover, the defendant does not claim that the trial court acted improperly when it allowed Gay to sit as a juror based on the answers that Gay did provide on voir dire. Nonetheless, it is also true that this court has routinely reviewed claims of jury misconduct or jury bias brought by way of motions for a new trial. See, e.g., *State* v. *Newsome*, 238 Conn. 588, 622–29, 682 A.2d 972 (1996) (reviewing trial court's denial of motion for new trial based on alleged juror misconduct); see also *State* v. *Brye*, 236 Conn. 209, 211, 671 A.2d 1295 (1996); *State* v. *Ross*, 230 Conn. 183, 227–29, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *Asherman*, 193 Conn. 695, 735–36, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Almeda*, 189 Conn. 303, 310, 455 A.2d 1326 (1983), on appeal after remand, 196 Conn. 507, 493 A.2d 890 (1985). In *State* v. *Asherman*, supra, 180 Conn. 144–45, this court stated that "errors which are claimed in relation to a *motion for a new trial* may be assigned on the appeal from the judgment rendered in the case in which the motion is made. . . . In the present case, the assignment of error would have to do with alleged *jury misconduct* and the defendant does not claim that he could not raise this particular claim of error on appeal. The alleged jury misconduct at this point is just one more event during the trial upon which the defendant may argue that a claim of error should be based after judgment is rendered." (Citation omitted; emphasis added.) Here, the defendant did just

that. That is not to say, however, that claims of juror misconduct do not also fall within the reach of a petition for a new trial brought pursuant to § 52-270. See, e.g., *Asherman* v. *State*, 202 Conn. 429, 439–43, 521 A.2d 578 (1987); *Aillon* v. *State*, 168 Conn. 541, 363 A.2d 49 (1975).

Indeed, there are important practical reasons why claims of juror misconduct raised prior to judgment should be able to be brought through the route of a motion for a new trial. "The trial judge plays a crucial role in ensuring that a criminal defendant receives a fair trial by an impartial jury, and must be ever vigilant, throughout the course of the trial, to guard against jury partiality. In a criminal trial, the judge is more than a mere moderator of the proceedings. It is [the judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . The jury room cannot be guarded with too much vigilance and jealousy. Courts must reject all evidence not received on the trial, and must repel every foreign influence, which may affect the minds of the jury. . . .

"*We recognize that the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided . . . and thus is in a superior position to evaluate the credibility of allegations of jury misconduct, whatever their source.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 527–28, 668 A.2d 1288 (1995). Permitting claims of juror misconduct to be brought by way of a motion for a new trial prior to judgment makes eminent sense because of the exigency of the situation when the court is confronted with such allegations. Id., 528–29. Even if claims of juror misconduct are not raised through a motion by the defendant, "a trial court must, when presented with any allegations of jury misconduct, conduct a preliminary inquiry, sua sponte if necessary, in order to assure

itself that a defendant's constitutional right to a trial before an impartial jury has been fully protected." Id., 528. Allegations of juror misconduct must be addressed at whatever stage they are encountered. Accordingly, we conclude that the issue of juror bias was properly before the trial court in the motion for a new trial brought prior to judgment and pursuant to Practice Book § 902.

On the basis of the reasons offered by the trial court, we conclude that the trial court in this case improperly vacated its decision granting the defendant a new trial.[17]

## II

We now reach the state's alternate ground for affirmance on this issue. The state argues that even if

[17] The state also asserts, for the first time on appeal, that the defendant did not file his motion for a new trial within the five days permitted by Practice Book § 903, and that the defendant did not receive permission from the trial court to file the motion at a later date. Practice Book § 903 provides: "Unless otherwise permitted by the judicial authority in the interests of justice, a motion for a new trial shall be made within five days after a verdict or finding of guilty or within any further time the judicial authority allows during the five-day period." Although the defendant's motion for a new trial was not filed within five days after the guilty verdict, the trial court accepted and acted on the motion. The state makes this timeliness claim even though it did not object in the trial court when the defendant filed the motion and it was clearly captioned "motion for a new trial." The state waived this claim by not objecting to the motion being filed more than five days after the verdict was returned. See *State* v. *Carey*, 222 Conn. 299, 307, 311, 610 A.2d 1147 (1992) (concluding that "Practice Book rules do not ordinarily define subject matter jurisdiction" and that "[t]he defendant . . . waived his right to contest the defective procedure [under the rules of practice] by failing to object [in the trial court]"), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994); *Lo Sacco* v. *Young*, 210 Conn. 503, 509, 555 A.2d 986 (1989) (concluding "that the five day filing limitation for motions to set aside a verdict and for a new trial under Practice Book § 320 [in civil cases] is procedural rather than jurisdictional . . . . [I]t is clear that the defendants waived the nonjurisdictional defect in the plaintiff's motion [by not objecting in the trial court]."); *State* v. *Davis*, 2 Conn. Cir. Ct. 257, 260, 197 A.2d 668 (1963) ("The motion [for a new trial] in this [criminal] case was not filed within the time limitation imposed by Practice Book, 1951, § 233. No objection having been raised, this formal defect is deemed waived.").

the trial court improperly vacated its order granting the defendant a new trial, the defendant has failed to establish that he was actually prejudiced by the juror's failure to disclose certain information. Because we conclude that the trial court's ruling with respect to the defendant's motion for a new trial is unclear as to whether the trial court found actual bias, we remand the case for further articulation as to the basis of the trial court's ruling.

We are mindful that "[j]ury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, supra, 235 Conn. 522–23.

"A great deal is at stake in a criminal trial. The interests involved go beyond the private interests at stake in the ordinary civil case. They involve significant public interests. 'The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction.' *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1969). Indeed, the criminal jury trial has a role in protecting not only the liberty of the accused, but also the entire citizenry from overzealous or overreaching state authority. *Duncan* v. *Louisiana*, 391 U.S. 145, 156, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). In addition, the state has a valid and weighty interest in convicting the

guilty. *Summerville* v. *Warden*, 229 Conn. 397, 427, 641 A.2d 1356 (1994); *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993)." *State* v. *Patterson*, 230 Conn. 385, 398, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996).

Nevertheless, "[t]o succeed on a claim of bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact. *State* v. *Bowen*, 167 Conn. 526, 532, 356 A.2d 162 (1975); *State* v. *Clark*, 164 Conn. 224, 228, 319 A.2d 398 (1973). It follows therefrom that the trial court must make a finding of the ultimate fact sought to be proved. A new trial is not required where a juror has given a false answer on voir dire which has the effect of depriving counsel of the opportunity to exercise the right to challenge a juror unless it appears that the party seeking it has been prejudiced in his case by the false answers. *State* v. *Moffett*, 38 Conn. Sup. 301, 311–12, 444 A.2d 239 (1981); *Moynahan* v. *State*, 31 Conn. Sup. 434, 437, 334 A.2d 242 (1974); see *Burns* v. *State*, 84 Conn. 518, 521, 80 A. 712 (1911)." *State* v. *Almeda*, supra, 189 Conn. 313. In *Almeda*, the court indicated that "[i]t is central to note that while the court might have been justified in drawing an inference of actual bias from the facts, especially when considered in light of their initial intentional nondisclosure, the court did not explicitly do so." Id., 312. The court, in *Almeda*, remanded the matter for an articulation with respect to the basis of the trial court's decision. Id., 314. In the subsequent appeal in *Almeda*, after the trial court had articulated its findings in accordance with the remand order, we indicated that "[t]he scope of the remand required that the trial court make an explicit finding of the ultimate fact to be proved, actual bias on the part of a juror." *State* v. *Almeda*, 196 Conn. 507, 508, 493 A.2d 890 (1985). The trial court articulated its decision and found actual bias, and we affirmed its decision. Id., 508–509.

In the present case, the trial court, relying on *State* v. *Almeda*, supra, 189 Conn. 303, found that "the defendant is not able to demonstrate actual bias but . . . the court may import bias from all of the surrounding facts and circumstances. The facts and circumstances brought to the court's attention in this matter suggest [that] the requested disqualification of [Gay] as a juror is based upon something more than mere speculation. . . . Following the review of the background of this juror as brought out by the individual voir dire and the subsequent evidentiary hearing of September 19, 1994, the perception of the court is that this defendant was entitled to more candid responses to the questions posed to the veniremen on voir dire and had those been given there is little question that on motion the court would have excused him from service. The perception as well as the actuality of a fair trial must be preserved in order that justice be done." Consequently, the trial court initially ordered a new trial.

Unfortunately, we are in the same position here as we were in *State* v. *Almeda*, supra, 189 Conn. 303. It is not clear from the trial court's decision in this case whether it found actual bias. Although the trial court's decision correctly stated that it "may import bias from all of the surrounding facts and circumstances," it also vaguely noted that all the facts and circumstances brought out at the hearing "suggest [that] the requested disqualification of [Gay] as a juror is based upon something more than mere speculation." In addition, the court stated that "the perception of the court is that this defendant was entitled to more candid responses," and that "[t]he perception as well as the actuality of a fair trial must be preserved . . . ." We conclude that the ruling as a whole lacks a definitive finding on whether there was actual bias. In order for this court to evaluate the state's claim that there was no actual bias, the trial court must therefore first clarify its find-

ings on the claim of alleged juror partiality. "Where necessary to the proper disposition of the cause, this court may remand the case for a further articulation of the basis of the trial court's decision. *State* v. *Almeda*, [supra, 189 Conn. 314]." (Internal quotation marks omitted.) *State* v. *Byrd*, 233 Conn. 517, 523, 659 A.2d 1201 (1995).

The case is remanded to the trial court for further articulation regarding whether the trial court found actual bias on the part of juror Richard Gay. We, however, retain jurisdiction over this appeal.

In this opinion the other justices concurred.