STATE OF CONNECTICUT *v.* RYAN MYERS
(SC 15208)

Callahan, C. J., and Borden, Berdon, Palmer and McDonald, Js.

Argued March 18, 1997—officially released May 12, 1998

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, assistant state's attorney, with whom were *Elpedio Vitale*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, Ryan Myers, was convicted, after a jury trial, of felony murder in violation

of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes §§ 53a-8 and 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a), and attempted assault in the first degree in violation of General Statutes (Rev. to 1993) § 53a-59 and General Statutes §§ 53a-49 and 53a-8. Subsequently, the defendant appealed to this court raising the issue of juror bias and several evidentiary issues. In *State* v. *Myers*, 242 Conn. 125, 134, 698 A.2d 823 (1997) (*Myers I*), we bifurcated the defendant's appeal for the purpose of allowing us first to address whether the defendant should be granted a new trial on the basis of juror bias. In *Myers I*, we concluded that the issue of juror bias could not be resolved on the basis of the record before us, but would require a further articulation by the trial court of the basis for its decision to order a new trial. Id., 142–43. Specifically, we sought clarification from the trial court as to whether it found actual bias on the part of the jury foreperson, Richard Gay, whose impartiality was challenged by the defendant. Id., 143. We remanded the case to the trial court for further articulation, but retained jurisdiction over the appeal. Id. Following the articulation by the trial court, the parties were permitted to submit supplemental briefs in order to address the trial court's articulation. We now address the merits of the appeal.[1]

The following facts and procedural history are relevant to this appeal. Following the guilty verdict returned by the jury, the defendant filed a motion for a new trial pursuant to Practice Book § 902, now Practice Book

---

[1] We address only the issue of whether the defendant properly was granted a new trial by the trial court on the basis of juror bias. Because we conclude that the defendant is entitled to a new trial, and the specific evidentiary issues raised by the defendant may not arise again in a new trial, we decline to address those issues in this appeal.

(1998 Rev.) § 42-53, on the basis of juror bias. On September 19, 1994, the trial court held an evidentiary hearing on the issue.[2] *Myers I,* supra, 242 Conn. 130–31. On October 24, 1994, before the completion of the hearing and before ruling on the defendant's motion, the trial court sentenced the defendant to a total term of 100 years imprisonment. Id., 131. The court stated that it sentenced the defendant before deciding his motion in order to ensure that there would be appellate review of its decision on the motion. Thereafter, the trial court granted the defendant's motion for a new trial. Id., 131. Subsequently, in a motion for reconsideration of the decision to grant a new trial, the state argued for the first time that the defendant's claim of juror bias was raised in a procedurally defective manner. Id. The state argued that, because the defendant had failed to institute a separate proceeding by way of a petition for a new trial, pursuant to General Statutes § 52-270, by serving a writ and complaint on the state, the defendant's petition was brought improperly and, consequently, the state was deprived of its right to appeal from the trial court's order granting a new trial. Id., 131–32. The trial court agreed with the state and vacated its order granting a new trial. Id., 132. In *Myers I,* we decided that the issue of juror bias was not required to be raised in a petition for a new trial brought pursuant to § 52-270, but that the defendant properly had brought the issue before the court in a motion for a new trial made pursuant to Practice Book § 902. Id. Therefore, we concluded that the trial court improperly had vacated its order for a new trial on that basis. Id.

In support of his motion for a new trial in *Myers I,* the defendant argued that the juror, Gay, had been

---

[2] "The remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *State* v. *Almeda,* 189 Conn. 303, 313, 455 A.2d 1326 (1983), on appeal after remand, 196 Conn. 507, 493 A.2d 890 (1985).

the victim of an assault thirteen months prior to his selection as a juror that would have affected his ability to render an impartial verdict, and that Gay had made no mention of the assault at any time during the process of jury selection or at any time thereafter. In the evidentiary hearing held on the defendant's motion, Gay testified that when asked during voir dire questioning whether any friend or family member had ever been the victim of a crime, he failed to mention the assault because he did not think that it was relevant, that he felt it had no bearing on anything, and that he had answered in the negative because he did not think that a "family member" included him.

The defendant also offered evidence in the form of newspaper articles that appeared in the New Haven Register on May 1, 1993, reporting that Gay had been assaulted by a group of youths following an automobile accident in New Haven in which he was pulled out of his car or exited the car on his own and thereafter was assaulted and, as a result of the assault, required hospitalization. Id., 133. In the articles, Gay was purported to have stated that " 'the law was easing up too much on these kids, [who] are not good for anything and the law should kick their . . . .' " Id. Gay also reportedly stated: " 'These people are out on the street corners, selling drugs all day. They're not educated— they only know if you hurt my homeboy, I'm going to hurt you back.' " Id., 133 n.11. The trial court found that the defendant, a young black male who resided in New Haven, generally would fit within the class of individuals allegedly referred to by Gay. In his testimony at the evidentiary hearing, Gay claimed not to recall specifically what he told the New Haven Register reporter. Id., 133. He also claimed not to remember the assault, although he did recall that he had wanted the police to investigate the incident because he had been "beat up." Id.

Following this court's remand order in *Myers I*, the trial court articulated the basis for its decision to order a new trial as follows: "In response to the remand of this case, this court finds actual bias on the part of the juror, Richard Gay.

"This court's memorandum of decision dated March 17, 1995, as on file and referred to at length in [*Myers I*] set forth essentially the facts from which the court may reasonably infer that actual bias existed on the part of [Gay] at the time he was questioned on voir dire examination on May 9, 1994. A review of Gay's responses during the course of the evidentiary hearing before this court on September 19, 1994, and his responses to the voir dire inquiry leads this court to conclude that [Gay's] testimony was not credible as it related to his recollection of the assault to which he had been subjected some thirteen months prior to his service as a juror in this case. In his voir dire examination . . . he was asked whether any friend or family member had ever been the victim of a crime. His response was 'I have to think.' Apparently, he reflected on this question and responded, 'I don't think so.'

"When the transcript of his testimony during the evidentiary hearing is reviewed and the extent of the assault which he apparently experienced one year before requiring hospitalization, his response to the voir dire inquiry strongly suggests a lack of candor if not intentional concealment of the event.

"As noted . . . [in *Myers I*], it is the trial [court's] responsibility 'to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality . . . .' [*Myers I*, supra, 242 Conn. 138.] This is true for any trial, civil or criminal, but especially so in a criminal trial . . . . [Id., 140.] [Gay] owed the defendant in this case a greater degree of candor than that exhibited.

"As indicated above, from the facts set out in the memorandum of decision on motion for a new trial and a review of [Gay's] responses during the evidentiary hearing of September 19, 1994, the court finds that actual bias may reasonably be implied on the part of this juror and the court so finds." (Citation omitted.)

In this appeal, the state claims that the trial court's articulation is based upon an erroneous assessment of the facts and law applicable to them, and that the trial court order granting the defendant a new trial was improper. Specifically, the state argues that the trial court's finding of actual bias is not legally supportable because it fails to address explicitly Gay's ability to return an impartial verdict and, instead, appears to infer bias on the basis of Gay's status as a crime victim. The defendant argues that the trial court did not infer bias as a result of Gay's status as a crime victim, but, rather, did so as a result of the evasive and inconsistent answers given by Gay in response to questioning during the postjudgment proceedings about his voir dire testimony. Therefore, the defendant contends that the trial court's finding of actual bias is legally and factually correct and, as a result, a new trial is warranted. We conclude that the trial court properly ordered a new trial.

"[T]o succeed on a claim of bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact. . . . It follows therefrom that the trial court must make a finding of the ultimate fact sought to be proved. A new trial is not required where a juror has given a false answer on voir dire which has the effect of depriving counsel of the opportunity to exercise the right to challenge a juror unless it appears that the party seeking it has been prejudiced in his case by the false answers." (Citations omitted; internal quotation marks omitted.) Id., 141. It is actual bias, rather than bias that is implied on the basis of a juror's

status or on the basis of a juror's dishonesty during voir dire, that is dispositive in raising a claim of bias from the realm of speculation to the realm of fact. *State v. Almeda*, 189 Conn. 303, 313, 455 A.2d 1326 (1983), on appeal after remand, 196 Conn. 507, 493 A.2d 890 (1985). The requirement that actual bias be demonstrated exists because "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984). Whether a defendant should be granted a new trial based upon juror misconduct is a determination that lies within the sound discretion of the trial court. *State v. Small*, 242 Conn. 93, 113, 700 A.2d 617 (1997).

In this case, the trial court heard Gay's original voir dire testimony as well as his subsequent testimony in the postjudgment proceedings. The court noted that there were several instances of inconsistency between Gay's voir dire testimony and his subsequent testimony, and that Gay's responses to several questions indisputably were evasive. Specifically, after hearing Gay's subsequent explanations, the court stated that Gay's response to the voir dire question about whether any friend or family member had ever been the victim of a crime "strongly suggests a lack of candor if not intentional concealment of the [assault]" and that "Gay's [subsequent] testimony was not credible as it related to his recollection of the assault to which he had been subjected some thirteen months prior to his service as a juror in this case."[3] As the finder of fact, the court

---

[3] For example, the transcript of the postjudgment proceedings reveals that Gay responded as follows to the following questions posed by defense counsel, Leo E. Ahern:

"Q. You were misquoted [by the New Haven Register reporter]?

"A. God didn't put no one here for nothing. Everybody is here for a reason, and I am a Christian.

\* \* \*

was not compelled to attribute the inconsistencies in Gay's testimony to misunderstanding or lapse of memory, but reasonably could have concluded, as indeed it did, that there had been a lack of candor on Gay's part and that portions of his testimony simply were not credible. Furthermore, the court received and properly could have considered evidence pertaining to the nature of the assault on Gay, as well as disputed evidence pertaining to comments that he allegedly made to a news reporter after the incident. On the basis of all of the evidence, and the weight attributed to it, the trial

"Q. Now, can you tell the court why [during voir dire questioning] you didn't disclose the fact that you had been a victim of this assault?

"A. I didn't think it was relevant. It had no bearing on anything. In fact, I didn't even think about it. It didn't come to my mind.

\* \* \*

"Q. If I understand right, Mr. Gay, you are telling the court if I had used the word 'you' [in addition to 'a friend' or 'family member'], that you would have been more forthcoming and told us about this event?

"A. *I would absolutely have told you the truth.* . . .

"Q. But you felt the implication of my question including other incidents, that that didn't call for you to come out and be forthcoming about this situation?

"A. Well, as I said before, my understanding in my own judgment in my own heart, that you didn't ask me had I been a victim of a crime. *Had you asked me at that time, I probably would have said no because that I want to put behind me. I have no problem with it.*

\* \* \*

"Q. No incidents come to mind [of any friend or family member having been the victim of a crime]?

"A. There hasn't been a crime. No one has been arrested there. It was an accident. There has been no litigation on that case whatsoever. No one was arrested.

"Q. You are telling me it was because no arrests were made you felt you were not a victim of a crime?

"A. I am not saying that, but no one has been arrested.

\* \* \*

"Q. In your opinion was that a crime that you were assaulted at the scene?

"A. Well, in my religion I don't think it is a crime. We don't consider that as being a crime. We consider that as being the devil's work, and you [are] going to find it a little difficult to deal with me on that issue because I am religious. I am a Christian, and I have no ill feeling toward any of those people." (Emphasis added.)

court concluded that actual bias existed on the part of Gay that affected his ability to return an impartial verdict.

We do not agree with the state's argument that the trial court inferred bias solely on the basis of Gay's status as a crime victim. Rather, we conclude that the trial court based its finding of actual bias, as it professed to, upon numerous pieces of evidence—such as Gay's inconsistent testimony and his evasiveness during questioning—that together allowed the court reasonably to conclude that his testimony was lacking in candor and reflected bias. Therefore, we conclude that the trial court did not abuse its discretion in finding actual bias on the part of Gay. In such circumstances, a new trial is required.

The judgment of the trial court vacating its order for a new trial is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.