[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for a new trial pursuant to Conn. Gen. Stat. § 52-270 from his conviction for charges arising from an incident which occurred at the Enfield Correctional facility on September 28, 1990 which resulted in the death of a prison inmate. The petitioner alleges that a juror, Kathleen Greco, failed to disclose during voir dire an incident involving her son, which incident was similar to the incident on trial and if disclosed that she would not have been selected. Having been selected the bias resulted in her voting for conviction even though she did not believe the State proved its case and the petitioner was denied his right to a meaningful voir dire and a fair trial.
The petitioner was presented before a jury on a four count information and the evidence produced that on September 28, 1990, several inmates at the Enfield medium security correctional facility (Enfield) were observed assembling at a picnic table in the compound. The group, consisting of approximately ten inmates, raced onto the miniature golf course that was located in an open recreational area at the center of the compound. As the charging group of inmates reached the golf course, a fight erupted. A correction officer, Leonard Burke, observed a group of inmates beating the victim. Burke recognized the defendant "[a]s a part of the group that was beating on" the victim. Another inmate, Walter Gouch, saw the defendant put a weapon up his sleeve after stabbing the victim.
As another correction officer, Antonio Cancel, approached the group, the defendant fled and was pursued by Cancel throughout the compound. During the chase, Cancel observed an object resembling a shank in the defendant's hand. Scott Loos, another correction officer who had pursued the defendant, also observed the weapon in the defendant's hand and saw the defendant drop it on the ground. When the officers finally reached the defendant, several inmates encircled the officers and temporarily prevented them from apprehending the defendant. Correction officers and law enforcement personnel retrieved several items from the compound, among which were an 8.5 inch metallic shank with tape wrapped around its handle, a razor blade wrapped in tape, and a pointed threaded metal rod. CT Page 5660
The defendant was found guilty of the charges of conspiracy to commit assault in the first degree, rioting at a correctional institution and possession of a weapon in a correctional institution, and was acquitted of violating General Statutes §§ 53a-8 and 53a-55 (a)(1), first degree manslaughter as an accessory. State v. Santiago, 48 Conn. App. 19,22-3; cert. denied, 245 Conn. 901.
Prior to sentencing the trial judge, Norko, J., held a juror misconduct hearing as a result of written claims made by a juror on said trial, Donna Weingart. See Respondent's Exhibits A and B. State v. Brown,235 Conn. 502, 528. The transcript of that hearing has been introduced as Respondent's Exhibit C. Subsequent to the hearing the petitioner was sentenced on March 27, 1995, an appeal was taken and the judgment was affirmed. Certification to appeal was denied. Alleged juror misconduct was not an issue in said appeal.
The petitioner called three witnesses, Donna Weingart and Kathleen Greco, both jurors on the petitioner's criminal trial and witnesses on the jury misconduct hearing, along with Greco's son, Shawn Welch whose beating on August 1, 1994 is a claimed cause of Greco's bias. The petitioner also introduced as exhibits a transcript of the voir dire of Greco, petitioner's Exhibit 1 and a copy of the police incident report concerning the assault on Welch, Petitioner's Exhibit 2.
A perusal of the transcript of the juror misconduct hearing,Respondent's Exhibit C, reveals that Weingart testified about three incidents when she and other jurors discussed the case outside the jury room, twice before deliberations began. Chronologically the first time was walking to lunch with Greco and they discussed how they thought the other jurors would face the task in deliberations. Greco heard Linda say how impressed she was with the prosecutor and that she would probably be prosecutor-minded. Greco said she had not received enough evidence at that time. The second time Weingart was walking to lunch with Greco and John which was after the coroner's testimony and although Weingart was of the opinion that there was sufficient proof on Counts 3 and 4, rioting and possession of a weapon in a correctional institution, Greco and John were not convinced. The third time was at lunch when the jury already had started deliberations and five of the six jurors were present, they were freely discussing the case although in hushed tones so other diners would not hear. Weingart recalls that the discussion ended when she blurted out "Even John thinks he's innocent". None of the other six jurors corroborates any of the events of her testimony. Only Melissa Jarvis testified as to any such discussion outside of deliberations and that to a remark by Greco "I think the defendant is being set up." CT Page 5661
Where the trial court was in no way responsible for the juror misconduct, a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct.Asherman v. State, 202 Conn. 429, 442. Judge Norko obviously found the defendant failed to carry his burden. The petitioner cannot collaterally attack the court's ruling denying a mistrial now simply because he missed an earlier opportunity to challenge it on direct appeal. Id., 442- 3.
The petitioner now brings another facet, the voir dire questioning of Greco. Petitioner's Exhibit 1. He pinpoints four questions posed to her by the State which he believes should have made her disclose a beating her son received on August 1, 1994 on the streets of Waterbury. On page one "Is there anything about it, perhaps particularly the charges, which make you think that you could not be a fair juror?" "No." On page two "Is there any way in which the ethnic background of anyone in the case would effect your ability to be a fair and impartial juror?" "No." On page six "Is there anything about yourself that you can think of that might be a reason why you couldn't be fair in this case? Something that happened to you or someone close to you? Something about a family situation or a job situation? Anything at all?" "Not that I can think of." And on the bottom of page six and top of page seven "We're not allowed to get into the facts very much but one of the facts that's likely to arise or will most certainly arise very early on in this case is that Reuben Santiago here is a member of the Latin Kings organization. Have you ever heard of that group?" "I've heard of it just in the papers. You know, it's highly publicized. I don't know who's in or what, you know, but I don't know anyone that's in it or anything." "Do you have any general view of that group from what you've heard?" "Just that it's a gang." "It's a gang, what does that mean to you?" "It's a gang. A bunch of kids in a gang."
The petitioner labels Greco's responses false because they do not include her son's beating in her response particularly since it is similar to the event of the criminal trial for which she is being voir dired. To succeed in his claim of bias the petitioner must raise his contention from the realm of speculation to the realm of fact. State v.Myers, 244 Conn. 683, 689. An examination of the events are not similar. Welch's beating was on a street, when he was hit in the head by rocks, his treatment was 2-3 hours of outpatient time for which the doctors indicated no Sequela after 2-3 days and removal of a staple in 2-3
weeks; although the attack was by Hispanic males was not life-threatening and the victims were allowed retreat, whereas the criminal case was in a prison setting where the victim was set upon by sharp weapons, life-taking. The juror's questioning never directly elicited a response if any family member was the victim of an assault CT Page 5662 but only if the juror was biased as to the charges to be brought forward, the presence of an ethnic group, a Latino gang and that the petitioner was a member of the Latin Kings or was there anything in her background or her family to cause her to be unfair. In making this determination the court may use the surrounding facts and circumstances brought to the court's attention. State v. Myers, 242 Conn. 125, 142. In examining Greco's voir dire, Petitioner's Exhibit 1, her testimony before Judge Norko on the juror misconduct hearing, Respondent's Exhibit C, and her testimony on this habeas hearing, this court found her to be straight forward and credible, who fulfilled her duties with attention and feeling and without bias.
For the above reasons the petition is denied.
 Thomas H. Corrigan Judge Trial Referee